**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**Brooklyn Division**

| | | |
|---|---|---|
| RUBEN DIAZ, RENE FERNANDEZ, | ) | |
| MOHAMMED ISMAT, PRADIP SAHA, | ) | |
| RAMANDRA SAHA, MAXINE SMITH, | ) | |
| ABDUR RAQUIB, JOHNNY RAMIREZ, | ) | |
| MADGY SAAD, WALTER FREIRE, | ) | |
| MOZIBUR RAHMAN, | ) | |
| CHRISTOPHER STAVROPOULOS, | ) | |
| ABDUR RAHMAN, SYED AHMED, | ) | Case No. 1:12-cv-04418-JMA |
| WALTER GARCIA, ASHIF MIRU, | ) | |
| BISWA SAHA, SAYOT ALPHONSE, | ) | |
| ALBERTO PRADO, | ) | |
| MAURICE SCHWARTE, | ) | |
| ABELLA BOUALE, DENZIL HANNAH, | ) | |
| MILAD BARSOUM, | ) | |
| MOAZZEMUL HAQUE, and | ) | |
| ARUN SAHA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMEDEO HOTELS LIMITED | ) | |
| PARTNERSHIP, NWPH, LLC, | ) | |
| NORTHWOOD HOSPITALITY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**AMEDEO HOTELS LIMITED PARTNERSHIP'S BRIEF**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**1.   BACKGROUND** ................................................................................................ 3

**II.      ARGUMENT** ................................................................................................ 11

A.    Plaintiffs' Statutory Claims Are Preempted by the Labor Management
Relations Act Because the Court Must Determine First Whether Plaintiffs are
Entitled to the Charges at Issue Under the Collective Bargaining Agreement ........................ 11

B.    Plaintiffs' Claims Fail Because Amedeo Gave Notice to Customers of All
Applicable Charges and Plaintiffs Have Not Shown That a Reasonable Customer
Would Have Been Misled .................................................................................... 15

C.    The Captains Are Not "Managers", Are Represented by the Same Union as the
Plaintiffs, and Are Not Barred From Sharing the Service Charge ............................................ 18

D.    Defendant is Entitled to Summary Judgment on Plaintiffs' Claims under the
Fair Labor Standards Act .................................................................................... 20

E.    The Plaintiffs Also Are Not to be Entitled to Overtime under New York Law ............... 21

F.    New York Labor Law § 198-b is Not Applicable to the Present Case, and Plaintiffs'
Third Cause of Action is Duplicative of Plaintiffs' Claims Under § 196-d and § 193 ............. 22

G.    Plaintiffs Have Not Identified Any Improper Recordkeeping by the Hotel,
Particularly As it Was the Plaintiffs Themselves Who Calculated the Distribution
of the Service Charges .................................................................................... 24

**CONCLUSION** ........................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

Barenboim v. Starbucks Corp., 698 F.3d 104, 110 (2d Cir.),
   *certified question accepted*, 20 N.Y.3d 914, 980 N.E.2d 528 (2012),
   and *certified question answered*, 21 N.Y.3d 460, 995 N.E.2d 153 (2013) ................... 19, 20, 23

Chan v. Sung Yue Tung Corp., 2007 WL 313483, at *21 (S.D.N.Y. Feb. 1, 2007) ................... 20

Chevalier v. Civil Serv. Employees Ass'n, Inc., 2011 WL 1298739, at *9-10
   (N.D.N.Y. Mar. 31, 2011) ........................................................................................................ 22

Cohen v. Stephen Wise Free Synagogue, No. 95 CIV. 1659 (PKL),
   1996 WL 159096, at *3 (S.D.N.Y. Apr. 4, 1996) ................................................................. 24

Gillian v. Starjem Restaurant Corp., No. 10-cv-6056 (S.D.N.Y. April 19, 2011) ....................... 23

Hoops v. Keyspan Energy, 822 F.Supp.2d 301 (E.D.N.Y. 2011) ............................................... 14

Horowitz v. La France Indus., 274 A.D. 46, 79 N.Y.S.2d 794 (App. Div. 1948) ....................... 23

In re Starbucks Employee Gratuity Litig., 264 F.R.D. 67 (S.D.N.Y. 2009) ................................ 23

Islam v. Hossain, 44 Misc. 3d 1216(A) (N.Y. Civ. Ct. 2014) ..................................................... 24

Johnson v. D.M. Rothman Co., Inc., 861 F.Supp.2d 326, 331-332 (S.D.N.Y. 2012) ................. 14

Lanzetta v. Florio's Enterprises, Inc., 763 F. Supp. 2d 615, 618 (S.D.N.Y. 2011) ...................... 25

Linwood v. United Activities Unlimited, Inc., 43 Misc. 3d 131(A),
   988 N.Y.S.2d 523 (App. Term 2014) .................................................................................... 25

Maldonado v. BTB Events & Celebrations, Inc., 990 F. Supp. 2d 382, 393-94
   (S.D.N.Y. 2013) ...................................................................................................................... 18

Martin v. Rest. Associates Events Corp., 35 Misc. 3d 215, 222, 937 N.Y.S.2d 556, 563
   (Sup. Ct. 2012), *aff'd*, 106 A.D.3d 785, 966 N.Y.S.2d 436 (App. Div. 2013) ....................... 16

Matter of Associated Gen. Contractors, New York State Chapter, Inc.,
   36 N.Y.2d 957, 959, 335 N.E.2d 859, 859 (1975) ................................................................ 13

Mechmet v. Four Seasons Hotels, 825 F.2d 1173, 1177 (7th Cir. 1987);
   Nascembeni v. Quayside Place Partners, LLP, No. 09-23322-CIV,
   2010 WL 2351467, at *4 (S.D. Fla. June 11, 2010) ............................................................. 21

Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO,
   430 U.S. 243, 254 (1977) ....................................................................................................... 13

People v. Sherman, 201 Misc. 780, 783, 106 N.Y.S.2d 36, 40 (N.Y. Gen. Sess. 1951) ............. 22

People, on Complaint of Rabinowitz v. Desowitz, 166 Misc. 1, 2 N.Y.S.2d 87
   (N.Y. Magis. Ct. 1938) ........................................................................................................... 22

Pitta v. Hotel Ass'n of New York City, Inc., 806 F.2d 419, 422 (2d Cir. 1986) ......................... 13

Rallis v. Holiday Inns, Inc., No. 85 C 1001, 1988 WL 53194, at *1
   (N.D. Ill. May 13, 1988) ......................................................................................................... 21

Salomon v. Adderley Indus., Inc., 960 F. Supp. 2d 502, 511 (S.D.N.Y. 2013) .......................... 24

Sarmiento v. World Yacht, Inc., 10 N.Y.3d 70 (2008) ............................................. 2, 3, 15, 16, 20

Spicer v. Pier Sixty LLC, 269 F.R.D. 321 (S.D.N.Y. 2010) ....................................................... 17

<u>Thomas v. Meyers Associates, L.P.</u>, 39 Misc. 3d 1217(A) (N.Y. Sup. Ct. 2013) ...................... 22

<u>Torres v. Four Seasons Hotel of New York</u>, 277 A.D. 23, 715 N.Y.S. 2d 28 (2000) ................. 13

<u>Weiss v. Mayflower Doughnut Corp.</u>, 1 N.Y.2d 310, 316, 135 N.E.2d 208, 210 (1956) ........... 12

**Statutes**

29 U.S.C. § 173(d) ................................................................................................................... 13

29 U.S.C. § 207(i) ............................................................................................................... 3, 20

**Other Authorities**

§301 of the Labor Management Relations Act ......................................................................... 2

Labor Law § 195(1)-(6) ......................................................................................................... 24

N.Y. D.O.L. Memo of August 21, 2013 ................................................................................. 18

N.Y.D.O.L., Opinion Letter of March 11, 2010 ..................................................................... 17

New York Labor Law § 196-d ..................................................................................... 15, 16, 20

New York Labor Law § 198-b ................................................................................................. 22

**Regulations**

12 N.Y. Comp. Codes R. & Regs. § 146-2.18 ....................................................................... 18

The plaintiffs in this action are highly compensated and long term employees of the New York Palace Hotel.  All of them have worked in the hotel's room service or in-room dining ("IRD") department for at least 15 years and many have worked at the hotel for over 25 years. The overwhelming majority of the compensation they have received has come from the service charges the hotel imposes on room service orders and hospitality functions.  Throughout this time, the plaintiffs have been members in good standing of Local 6 of UNITE HERE!, New York Hotel Trades Council, AFL-CIO (the "Union").  Local 6 has represented them for purposes of collective bargaining over wages, hours and other terms and conditions of employment.  A significant number of the plaintiffs have served as Union delegates or assistant delegates.

Pursuant to the duty to bargain collectively that is mandated by the National Labor Relations Act, the Union and the hotel negotiated a series of collective bargaining agreements governing compensation and other terms of employment in the IRD department.  At least as early as 1990, the Union agreed on behalf of its members that certain charges in room service were to be divided among the plaintiffs, other Union members and the hotel.   Subsequent agreements also provided for compensation and established other conditions of employment in the department.

As part of this ongoing process, the Union asked to bargain with the hotel about certain subjects in the IRD department during 2010.  This request stemmed from a complaint the plaintiffs had made to the Union about the shares of the service charges that they received and the Union sought to resolve these complaints through collective bargaining.  Accordingly, the hotel and the Union proceeded to bargain collectively as required by the NLRA.  In 2011, these negotiations produced an agreement between the hotel and the Union that increased the plaintiffs' shares of the different service charges and authorized the hotel to  continue to charge

an administrative fee on certain functions as well as collect an in-room dining surcharge on individual orders delivered to guest rooms. The agreement was duly ratified by the plaintiffs in a vote conducted by the Union in January of 2011. The hotel and the Union subsequently entered into a written agreement that memorialized the agreement that had been negotiated. The president of the Union as well as the hotel's general manager signed the agreement.

Despite this negotiated settlement of the plaintiffs' grievances, they subsequently filed the instant action. They now claim they are owed even more money because the hotel allegedly failed to properly advise its guests that it was retaining part of the service charge on hospitality events in violation of the New York Court of Appeals, decision in <u>Sarmiento v. World Yacht, Inc.</u>, 10 N.Y.3d 70 (2008). The plaintiffs subsequently raised other claims including an allegation that the hotel violated the overtime requirements of the Fair Labor Standards Act ("FLSA").

Amedeo respectfully submits that plaintiffs' claims were settled and resolved and, therefore, are preempted by operation of §301 of the Labor Management Relations Act. The issues the plaintiffs now raise were duly resolved through collective bargaining and the Agreement that resulted from those negotiations. The Union contract further contains an exceptionally broad arbitration provision that encompasses the claims in this case. Plaintiffs simply have failed to properly use this procedure.

Moreover, Amedeo further shows that from at least 2007, it informed its guests that it was retaining a 4% administrative fee on hospitality functions and advised its guests that it was imposing a cover charge on a la carte orders. All of these charges complied with regulations promulgated by the New York Department of Labor and plaintiffs do not allege that Amedeo deliberately misled or misinformed its guests. With respect to plaintiffs' claims of overtime

violations, Amedeo shows that these are barred by operation of §7(i) of the FLSA.  29 U.S.C. § 207(i).  The plaintiffs earned well in excess of time and one-half the minimum wage and more than half their compensation was derived from the service charges the hotel imposed on both room service deliveries and hospitality functions.  The plaintiffs' other claims are derivative of their World Yacht and FLSA claims and accordingly should be dismissed.  For these reasons and those stated below, Amedeo respectfully requests that it be granted summary judgment in this case.

1.     **BACKGROUND**

Amedeo incorporates its Statement of Material Facts that is served contemporaneously with this Brief.  Amedeo also provides the following factual summary.

Amedeo Hotels operated the New York Palace Hotel until July 2011.[1]  During this time, Amedeo operated an in room dining or room service department.   Declaration of Brandon McCurley at ¶ 4.  The IRD department occupied the entire 4th floor of the hotel.[2]  There, meals were prepared for delivery to the guest rooms.[3] The IRD department provided both "a la carte" and hospitality services.[4]  A la carte service involved the delivery of individual food and beverage orders to guest rooms.[5]  Hospitality services included providing food and beverages for social functions held by guests in guest rooms.[6] Hospitality service also included functions known as "One-on-Ones" which were events where corporate clients would rent a number of

---

[1] Deposition of Jess Wilner at pp. 11-12.
[2] Id. at ¶ 5
[3] Id. at ¶ 5.
[4] Id. at ¶ 6.
[5] Id. at ¶ 6.
[6] Id. at ¶ 6.

guest rooms from which much of the furniture would be removed. [7]  Food and beverages then would be provided in the rooms in a buffet style arrangement. [8]

The IRD department employed individuals in several different job classifications. [9] These included severs, assistant servers, captains and managers. [10]  Servers primarily were responsible for delivering food and beverages to guest rooms in response to orders placed by guests. [11]  Their duties also included setting up and arranging for meals to be delivered. [12]

The plaintiffs in this actions were IRD servers who worked the a.m. and p.m. shifts. [13] The a.m. shift lasted from approximately 6:00 a.m. to 2:00 p.m. while the p.m. shift was from approximately 2:00 p.m. to 10:00 p.m. [14]  The hotel also had an overnight shift, but none of the plaintiffs regularly worked on that shift. [15]  In addition to the servers, the IRD department also employed persons in the job classification of captain. [16]  A captain generally functioned as a head waiter who was responsible for coordinating the delivery of orders and assisting the servers in servicing the guests. [17]  Captains were not members of the hotel's management and had no authority to hire, fire, discipline or schedule employees. [18]

All servers, captains and assistant servers were members of and represented by the New York Hotel Trades' Counsel AFL-CIO, Local 6 of UNITE HERE!. [19]  The hotel was a member of the Hotel Association of New York City, a trade association comprised of multiple

---

[7] Id. at ¶ 6.
[8] Id. at ¶ 6.
[9] Id. at ¶ 7.
[10] Id. at ¶ 7.
[11] Id. at ¶ 8.
[12] Id. at ¶ 8.
[13] Id. at ¶ 9.
[14] Id. at ¶ 9.
[15] Id. at ¶ 9.
[16] Id. at ¶ 7.
[17] Id. at ¶ 10.
[18] Id. at ¶ 11.
[19] Id. at ¶ 12.

employers.[20]  Both the Union and the hotel were parties to a collective bargaining agreement, the Industry Wide Agreement ("IWA").[21]

The IWA as well as supplemental agreements negotiated between the hotel and the Union governed the plaintiffs' employment. [22]  The latter contracts pertained to discrete issues in the IRD department and were negotiated pursuant to the NLRA. [23]  The hotel was required to negotiate with the Union over plaintiffs' wages, hours and other terms and conditions of employment. [24]  All of the IRD servers and captains were represented by the Union, and the hotel could not change their compensation or terms of employment without bargaining with the Union.[25]

Beginning in the 1990's and through 2011, the hotel and the Union negotiated a series of supplemental agreements that governed wages, hours and other terms of conditions of employment in the IRD department.[26]  These agreements dealt with a variety of specific issues in the IRD department.  Among other things, they addressed how the service charges the hotel imposed on different kinds of services would be distributed. [27]

In 2010, the Union informed the hotel that it wanted to bargain about a dispute that concerned the IRD servers. [28]  Management was provided with a copy of a letter which was

---

[20] Id. at ¶ 12.
[21] Id. at ¶ 12; *see* copy attached to defendant's Motion as Exhibit "6."
[22] McCurley Dec. at ¶ 13.
[23] Id. at ¶ 13.
[24] Id. at ¶ 13.
[25] Id. at ¶ 13.
[26] Dep. of Pradip Saha at pp. 45.
[27]  The parties colloquially referred to service charges as gratuities or tips.  Nevertheless, the service charge is an automatic charge that does not vary from order to order.  In addition, the hotel also imposed a service charge on hospitality functions that were serviced by room service.  This service charge applied to events such as weddings and One-on-Ones.
[28] Id. at ¶ 14.

addressed to the Union from its members in the IRD department. [29]   The letter contained a number of alleged grievances by the servers including a complaint about the amount of the service charges the servers received. [30] The letter was signed by all of the plaintiffs in this action and was addressed to the President of Local 6, Mr. Peter Ward. [31]

The hotel and the Union proceeded to bargain over the specific terms and conditions of the IRD servers' employment that were raised by the Union.[32]  These subjects included whether the hotel should eliminate the captain position altogether and whether the portion of the service charge the IRD servers received for a la carte deliveries and hospitality functions should be increased.[33]

These negotiations took place over a number of months.[34]   At least six or seven bargaining sessions were held.[35]   At all these sessions, the Union represented the servers and captains.[36]  Mr. Edward Cedeno, the Union's business agent responsible for the employees of the New York Palace, bargained on behalf of the servers and the captains.[37]   In addition to Mr. Cedeno, many IRD servers, all of whom are plaintiffs in this action, attended the negotiation sessions.[38]   These included Union Delegates such as Mr. Magdy Saad and Mr. Biswa Saha.[39]

---

[29] Id. at ¶ 14.
[30] Id. at ¶ 14.
[31] Id. at ¶ 14.
[32] Id. at ¶ 15.
[33] Id. at ¶ 15.
[34] Id. at ¶ 16.
[35] Id. at ¶ 16.
[36] Id. at ¶ 16.
[37] Id. at ¶ 16.
[38] Id. at ¶ 17.
[39] Id. at ¶ 17.

IRD captains also attended the negotiations.[40]   The captains included Mr. Mustapha Bouriat and Mr. John Dolcy who then was a captain.[41]   These individuals also were represented by Local 6.[42]

The Union and the hotel exchanged proposals and eventually reached an agreement to resolve the dispute.[43]   In January 2011, the Union held a meeting at which the employees voted to ratify the agreement reached with the hotel.[44]   (*see* defendant Amedeo's Request for Admission, Exhibit "3(c)"; *see also* affidavit of Alyssa Tramposch at ¶¶6,7").   The following plaintiffs in this action cast ballots in favor of adopting the agreement:  Mr. Pradip Saha, Ms. Maxine Smith, Mr. Md. Mozibur Rahman, Mr. Mohammed Ismat, Mr. Magdy Saad, Mr. Abdur Rahman, Mr. Abdur Raquib, Mr. Ramendra Saha, Mr. Rene Fernandez, Mr. Mustapha Bouriat, Mr. Walter Freire, Mr. Ruben Diaz, Mr. Chris Stavropoulos, Mr. Milad Barsoum, Mr. Moazzemul Haque, Mr. Bisna Saha, Mr. Arun Saha, Mr. Maurice Schwarte, Mr. Denzil Hannah, Mr. Sayot Alphonse, Mr. Abella Bouale, and Mr. Ashif Miru. (See defendant Amedeo's First Requests for Admission attached as Exhibit 3(c), at ¶¶ 7-28, and exhibits thereto).

Following the ratification vote, the Union and the hotel signed a supplemental agreement containing the terms and conditions that had been reached.[45]   This Agreement was signed on May 25, 2011 by Mr. Peter Ward, President of the Union and Mr. Edward Mady, the General Manager of the hotel.[46]   The Supplemental Agreement provided, among other things, that a

---

[40] Id. at ¶ 17.
[41] Id. at ¶ 17.
[42] Id. at ¶ 17.
[43] Id. at ¶ 18; *see also* Dep. of Chris Stavropoulos at p. 36.
[44] McCurley Dec. at ¶ 18
[45] Id. at ¶ 18.
[46] Id. at ¶ 20.

severance package would be offered to those persons employed in the position of captain.[47]  The Union and hotel also agreed to red circle or phase out the captain position over time.  [48]

The Agreement expressly provided that there would be an increase in the amount of the portions of the service charge paid to servers on a la carte and hospitality orders. [49]  The service charge distributed to servers for a la carte orders was to be increased from 15% to 17% and if no captain worked the shift, by an additional 2%.[50]  For hospitality events, the service charge distributed to the servicers was increased from 12% to 15% and if no captain worked the shift, they were to receive the captain's 4% portion.[51]

The Agreement further expressly provided that "the hotel may continue to charge an administrative fee for hospitality events and on a la carte transactions above the amount set forth in §8.7 and 8.8 [of the Agreement], and may also charge and retain an a la carte cover and delivery charge."[52]  (Agreement at ¶ C.2).  Following the execution of the Agreement, Union Delegates and plaintiffs in this action, Magdy Saad and Biswa Saha, provided Amedeo with a letter further confirming that the employees on the a.m. IRD shift had agreed to the May 2011 agreement. [53]  Amedeo complied with the Agreement until it ceased managing the hotel in July of 2011. [54]

---

[47] Id. at ¶ 19.
[48] Id. at ¶ 19.
[49] Id. at ¶ 19.
[50] Id. at ¶ 19.
[51] Id. at ¶ 19.
[52] Id. at ¶ 21.
[53] Id. at ¶ 23.
[54] Id. at ¶ 22.

During Amedeo's management of the hotel, the plaintiffs were highly compensated employees earning over $80,000.00 per year in most cases.[55]   The amounts earned by the plaintiffs regularly increased over time and many of the plaintiffs now earn in excess of $100,000.00 per year.   The plaintiff's hourly rate of pay exceeded one and one-half times the minimum wage and more than half their compensation came from the portions of the service charges they received from a la carte orders and hospitality functions.[56]

The amount of the service charge on a la carte orders was expressly reflected on IRD menus that were placed in guest rooms.[57]   These stated that "a 17% gratuity, applicable sales tax and a guest room dining surcharge of $7.00 per person will be applied to all orders."[58]   Although the menu used the term "gratuity," the 17% actually was an automatic or service charge.[59] The hotel further imposed a guest room dining surcharge on a la carte orders, which sometimes was referred to as a delivery or cover charge.[60]   This amount was listed on guest checks as $7.00 as a separate line item.[61]

With respect to hospitality functions, the hotel utilized hospitality event orders ("HEOs") as contracts for its guests.[62]   These HEOs described the food, beverage and services provided during hospitality and One-on-One events.[63]   From at least as early as 2007, the HEOs included language immediately above the line for the guest's signature that informed the guest that the hotel would retain a 4% administrative fee.[64]   For example, the language in 2007 stated "please

---

[55] Id. at ¶ 25; *see also* Statement of Material Facts at p. 31.
[56] *See* McCurley Dec. at ¶ 25; *see also* Affidavit of Gus Cecchini at ¶36.
[57] See McCurley Dec. at ¶ 27.
[58] Id. at ¶ 27.
[59] Id. at ¶ 27.
[60] Id. at ¶ 28.
[61] Id. at ¶ 28.
[62] Id. at ¶ 29.
[63] Id. at ¶ 29.
[64] Id. at ¶ 29.

note that a 23% service charge and an 8.875% New York State sales tax is applicable to all food and beverage charges.  Of the 23% service charge, 19% will be distributed to the service staff as gratuity, 4% will be retained by the hotel as an administrative fee."  Occasionally, an HEO form was not utilized.  Rather, employees used a banquet event order ("BEO").  These also advised customers that the hotel would retain a 4% administrative fee.  Both the HEOs and BEOs were reviewed and acknowledged by guests prior to their event becoming confirmed. This was a regular business practice of the hotel.

In addition to the service charge and administrative fee, the hotel on occasion would charge a labor or butler fee.[65]  This was charged to a customer when a server would exclusively be stationed in a guest room during a hospitality function.[66]  This fee also was negotiated between the Union and the hotel.[67]  Over time, a practice was created under which the IRD servers were paid 100% of the butler fee for the first and last hours of a hospitality function and the hours in between were evenly split between the servers and the hotel.[68]  This practice duly became a part of the collective bargaining agreement between the hotel and the Union.[69]  The butler fee appeared on an HEO or BEO as a separate charge in the body of the document.[70]  It was not part of the service charge.[71]

At the conclusion of every shift in the IRD department, the servers would calculate the amount of the service charges and tips and how these were to be distributed among themselves, the captain (if there were one) and the assistant servers.[72]  These calculations were always done

---

[65] Id. at ¶ 32.
[66] Id. at ¶ 32.
[67] Id. at ¶ 33.
[68] Id. at ¶ 33.
[69] Id. at ¶ 33.
[70] Id. at ¶ 34.
[71] Id. at ¶ 34.
[72] Id. at ¶ 35.

by the servers.[73]  In addition, the hotel routinely provided the plaintiffs with earning statements. (Cecchini Affidavit at ¶44).   These earning statements showed the amount of hours and compensation that the plaintiffs received during a particular pay period.  (Id.).

## II.    ARGUMENT

A.   <u>Plaintiffs' Statutory Claims Are Preempted by the Labor Management Relations Act Because the Court Must Determine First Whether Plaintiffs are Entitled to the Charges at Issue Under the Collective Bargaining Agreement.</u>

As discussed above, all payments and distributions made by the hotel were made in accordance with the collective bargaining agreements between the plaintiffs' Union and the hotel.  Plaintiffs nevertheless claim, among other things, that they should also have received the entirety of the service charge, the administrative fee as well as the "guest room dining surcharges" and the "labor fees" charged in conjunction with room service and hospitality events, respectively.  These claims were or could have been addressed by their Union pursuant to grievance and arbitration provisions of the IWA and cannot be brought here.

The plaintiffs are represented by Local 6 of UNITE-HERE!, an affiliate of the New York Hotel Trades Council, AFL-CIO.  Local 6 and the NYHTC are not a small, weak Union, but are among the most powerful and aggressive labor organizations in the United States.  *See* http://hotelworkers.org/about/history/fighting-for-social-justice-since-1939   (describing the Union's history of "fighting" for workers since the 1930s, including consistently increasing the workers' standards of living:  "Today, our union's Industry-Wide Agreement (or 'IWA') is the best contract for hotel workers in the world.  Our union has a great tradition of militant contract enforcement, activism for social justice, and member participation.  Through their union, our members have the ability to speak with one strong voice.").

---

[73] Id. at ¶ 36.

Plaintiffs have benefited from the Union's representation in the form of generous salaries and benefits – as noted, the plaintiffs are not working at or near the poverty level, but earn between $80,000 and $115,000 annually.  All of the matters complained of in this lawsuit were subjects of the agreements negotiated between the Local 6 and the hotel, which the hotel has always scrupulously observed.  When the plaintiffs complained they were not satisfied with the distribution of the service charges, negotiations were held between the Union and the hotel, a resolution was reached in the form of the May 25, 2011, Supplemental Agreement, and the plaintiffs *signed off on this agreement.  See* June 13, 2011, memorandum ("We the Room Service AM shift all agree to the new proposal and are willing to honor the changes that are within said agreement."); *see also* Cecchini Affidavit at ¶¶ 25-33; McCurley Affidavit at ¶¶ 14-23.  Indeed, many of the plaintiffs were Union Delegates, and were directly involved in the grievance and resolution procedure.  McCurley Affidavit at ¶ 17.  Thus, the Union and the plaintiffs reached a negotiated settlement of their concerns and elected not to continue on to arbitration, though they could have done so.

It is a gross injustice for the plaintiffs to be permitted first to agree to a resolution of their claims through the Union and then to file a lawsuit based on the same claims.  The hotel cannot arbitrarily change the terms and conditions of the plaintiffs' employment when the plaintiffs are dissatisfied; it is obligated by law to negotiate any such changes with the Union, which it did.  The plaintiffs never claimed that the May 25, 2011, Agreement was illegal during the negotiations or prior to signing it.  Indeed, they agreed to the changes – only now do they claim that the policies to which they agreed are illegal.  At a minimum, they are complicit in the matter and to the extent they seek equitable relief, they are barred by the doctrine of unclean hands. *See, e.g.*, Weiss v. Mayflower Doughnut Corp., 1 N.Y.2d 310, 316, 135 N.E.2d 208, 210 (1956)

("The doctrine of unclean hands is … available when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct.").

The arbitration provision in the IWA is recognized as being one of the most inclusive and comprehensive in the country.  *See, e.g.*, Pitta v. Hotel Ass'n of New York City, Inc., 806 F.2d 419, 422 (2d Cir. 1986) ("No grievance – either specific or general – is excluded from this broad coverage."); *cf.*  Torres v. Four Seasons Hotel of New York, 277 A.D. 23, 715 N.Y.S. 2d 28 (2000) (claims by room service servers for alleged illegal tip pooling were subject to arbitration under the IWA).  Indeed, the very purpose of arbitration agreements in collective bargaining agreements, such as the one plaintiffs declined to invoke, is to resolve issues like the present ones so that resort to the courts is unnecessary and neither party is penalized for its conduct beyond the parameters of the agreement.  "In [the] field [of collective bargaining,] public policy favors the peaceful resolutions of disputes through arbitration as contrariwise it looks with disfavor on the exaction of penalties."  Matter of Associated Gen. Contractors, New York State Chapter, Inc., 36 N.Y.2d 957, 959, 335 N.E.2d 859, 859 (1975).   Congress expressed a preference for arbitration in the federal labor law itself:  "Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement."  29 U.S.C. § 173(d).  "In order to effectuate this policy, this Court has established a strong presumption favoring arbitrability."   Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO, 430 U.S. 243, 254 (1977).

In any event, the plaintiffs' claims here are preempted by Section 301 of the Labor-Management Relations Act ("LMRA"), because the Court cannot determine whether the

plaintiffs are entitled to payments under the Supplemental Agreement and IWA without interpreting these contracts.  "Section 301 preempts state law claims that involve interpretation of an underlying CBA."  Johnson v. D.M. Rothman Co., Inc., 861 F.Supp.2d 326, 331-332 (S.D.N.Y. 2012), citing, Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988).  In Hoops v. Keyspan Energy, 822 F.Supp.2d 301 (E.D.N.Y. 2011), the court held an FLSA claim preempted because resolution of the claim required interpretation of the CBA:

> [B]ecause the Plaintiff's entitlement to unpaid overtime under the FLSA hinges on his contractual right to receive night shift differentials in his straight-time wage rate, the Court cannot adjudicate the statutory claim without a ruling on the contract claim.  It is the threshold question that must be determined pursuant to the CBA dispute resolution procedures, and therefore the FLSA claim is premature.

822 F.Supp.2d at 307; *see also* Johnson, *supra*, 861 F.Supp.2d at 333 ("To determine whether the Plaintiffs were entitled to grandfather and hi-lo pay, the Court would have to evaluate Plaintiffs' work histories in light of the intended meaning and purpose of the CBA's terms, a task which the Court is ill-equipped to perform, and which the LMRA mandates should be left to the CBA's designated grievance procedures.").

The plaintiffs are claiming entitlement to portions of the administrative fee that were retained by the Hotel, the portion of the service charge distributed to captains and the "cover charges" and "labor fees", that, like the service charges, were negotiated by the Union and the Hotel and memorialized in the Supplemental Agreement.  Like the courts in Hoops and Johnson, this Court would be required to review and interpret a collective bargaining agreement to determine whether the plaintiffs are entitled to those amounts in light of the contract's history and the meaning of the provisions creating and interpreting those categories of charges, an impermissible task for this Court to undertake.  The plaintiffs are obligated to resort first to the

14

grievance and arbitration provisions of the IWA, with which they are familiar and have invoked on previous occasions with respect to other matters.

   B. Plaintiffs' Claims Fail Because Amedeo Gave Notice to Customers of All Applicable Charges and Plaintiffs Have Not Shown That a Reasonable Customer Would Have Been Misled.

All of the plaintiffs' claims arise out of their assertion that they should have received unpaid "gratuities/service charges, cover charges and/or labor fees", and that defendants violated New York Labor Law § 196-d by failing to pay them.  Fifth Amended Complaint ¶¶ 47-49.[74] Plaintiffs have failed, however, to demonstrate a required element of this claim, to wit, that defendants either misled customers regarding the nature of the charges or allowed customers reasonably to draw the inference that the disputed charges were intended for the plaintiffs.

The relevant portions of the statute, as interpreted by the New York Court of Appeals in Sarmiento v. World Yacht, Inc., 10 N.Y.3d 70 (2008), are as follows:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. … Nothing in this subdivision shall be construed as affecting practices in connection with banquets and other special functions where a fixed percentage of the patron's bill is added for gratuities which are distributed to employees, nor to the sharing of tips by a waiter with a busboy or similar employee.

Labor Law § 196-d.  The plaintiffs' complaint in World Yacht, supra, alleged that their employer told customers that the entire service charge was remitted to the waitstaff.  In deciding whether

---

[74] Plaintiffs' Sixth Cause of Action for unpaid overtime (derived from the assertion that the calculation of overtime improperly excluded the fees allegedly owed) is purportedly based on Labor Law § 652.  Fifth Amended Complaint ¶¶ 66-69.  That section, however, governs minimum wages, not overtime.  It is undisputed – and indisputable – that plaintiffs all make well in excess of the minimum wage; indeed, they earn between $90,000 and $150,000 annually.  See Affidavit of Gus Cecchini at ¶¶ 35-37.

the plaintiffs' complaint stated a cause of action under § 196-d, the court held that service charges, like tips, must be conveyed in their entirety to the service staff, *unless* the patron was not led to believe that the service charge was being collected in lieu of a gratuity:

> We hold that the statutory language of Labor Law § 196-d can include mandatory charges *when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees.* An employer cannot be allowed to retain these monies.

10 N.Y.3d at 81 (emphasis added). "Whether a charge 'purports to be a gratuity' is measured by whether a reasonable patron would understand that a service charge was being collected in lieu of a gratuity." Martin v. Rest. Associates Events Corp., 35 Misc. 3d 215, 222, 937 N.Y.S.2d 556, 563 (Sup. Ct. 2012), *aff'd*, 106 A.D.3d 785, 966 N.Y.S.2d 436 (App. Div. 2013). Moreover, it is the plaintiffs' burden to allege and prove that the employer represented or allowed customers to believe that a mandatory charge was being collected in lieu of a gratuity, or that the employer acted so as to cause customers to believe that the charge was a gratuity. *Id.*, 35 Misc. 3d at 225-26, 937 N.Y.S.2d at 566.

The record in the present case shows that Amedeo and Northwood have been scrupulous about informing customers when charges are and are not distributed in their entirety to the service staff. This is particularly obvious with respect to the charges labeled as service charges and gratuities. Thus, the In-Room Dining Menu states, in relevant part, "17% gratuity, applicable sales tax and a guest room dining surcharge of $7 per person will be applied to all orders." Affidavit of Brandon McCurley at ¶¶ 26-28; see also Affidavit of Gus Cecchini at ¶ 20 and Exhibit A thereto. The entire gratuity is distributed to the waitstaff, as it was when Amedeo was managing the Hotel. Cecchini Aff. at ¶ 19; McCurley Dec. at ¶ 26.

The Hospitality Event Orders inform customers of the specific percentage of the service charge that will be distributed to the service staff and what percentage will be retained by the

16

hotel as an administrative fee.  Cecchini Aff. at ¶ 23 and Exhibits B and C; McCurley Dec. at ¶¶ 29-31.  As recognized by the New York Department of Labor, "a patron will be less likely to believe that  a charge is for the service staff if it is labeled as an administrative fee." N.Y.D.O.L., Opinion Letter of March 11, 2010.  No customer has been misled about the ultimate distribution of the service charges.

The other charges disputed by plaintiffs are the "guest room dining surcharge" on the in-room dining menu and the "labor fee" associated with hospitality events.  As explained by former Director of Human Resources Gus Cecchini and former Food and Beverage Director Brandon McCurley, the guest room dining surcharge is explicitly identified separately from the 19% gratuity, and is a "per person" charge rather than a percentage of the bill's total.  Cecchini Affidavit at ¶¶ 20-21; McCurley Affidavit at ¶¶ 27-28.  It is thus a charge for a "specified material or service" that is manifestly separate from the gratuity.  *Cf.* 12 N.Y. Comp. Codes R. & Regs. § 146-2.18, discussed further below (a charge may be assumed to be a gratuity unless it is for other specified materials or services).  Likewise, the "butler fee" or "labor charge" charged on Hospitality events is an hourly charge to the customer to compensate for stationing a server in the Hospitality room during the event.  It is identified on the Hospitality Event Order as an hourly charge separate from the gratuity, and is shared between the service staff and the Hotel in accordance with the collective bargaining agreements between the plaintiffs' Union and the hotel.  Cecchini Aff. at ¶¶ 38-42; McCurley Dec. at ¶¶ 32-34.

In Spicer v. Pier Sixty LLC, 269 F.R.D. 321 (S.D.N.Y. 2010), the court granted summary judgment to the employer with respect to a form contract that included the following language: "12.25% ... is fully distributed to servers .... 9.75% ... is not a gratuity and serves to offset ancillary expenses associated with the event."  269 F.R.D. at 332.  "[N]o reasonable customer

17

could believe that the 'service charge' was a gratuity upon examination of this contract." *Id*.  *See also* Maldonado v. BTB Events & Celebrations, Inc., 990 F. Supp. 2d 382, 393-94 (S.D.N.Y. 2013) (where customers were clearly not misled as to its purpose, a delivery charge of 11% was not a "gratuity" that needed to be distributed to plaintiffs).

The New York Department of Labor's January 1, 2011, regulations do not change this analysis with respect to the charges disputed by the plaintiffs.  First, the New York D.O.L. recognizes that these regulations do not apply to events that occurred before January 1, 2011. N.Y. D.O.L. Memo of August 21, 2013, attached to defendant's Motion as Exhibit "4."  Rather, the DOL states that a variety of factors are to be considered in determining whether a reasonable customer would have believed that the service charge was to be distributed to the employees. (Id.).  Second, those regulations, codified at 12 N.Y. Comp. Codes R. & Regs. § 146-2.18, create a "rebuttable presumption" that a charge over and above "food, beverage, lodging, and other specified materials or services, including but not limited to any charge for 'service' or 'food service,' is a charge purported to be a gratuity."  *Id*., § 146-2.18(b).  As shown above, it was made clear to any reasonable customer that the service charge was distributed to the waitstaff (or specifically stated when any amount was used otherwise) and that the other charges were separate from the service charge.  Thus, no "reasonable customer" could possibly believe that these charges are or were intended as gratuities for the service staff.

C.    The Captains Are Not "Managers", Are Represented by the Same Union as the Plaintiffs, and Are Not Barred From Sharing the Service Charge.

Plaintiffs take issue with the fact that the IRD captains received a distribution of a part of the service charge.  The captains are members of the same bargaining unit as the plaintiffs, and are represented by the same Union as the plaintiffs.  Their duties are not managerial, but consist of ensuring that room service trays and hospitality events are properly prepared, and serving as

18

the liaison between the service staff and the guest. *See* Affidavit of Gus Cecchini at ¶¶ 9-18; Affidavit of Mustafa Bouriat, at ¶¶ 6-9. Captains have no authority to hire, fire, discipline, set schedules, determine pay rates or methods of payment or determine any other terms and conditions of employment of the plaintiffs or anyone else in the Hotel. Cecchini Affidavit at ¶¶ 10-11; Bouriat Affidavit at ¶ 5.

As already noted, the collective bargaining agreement between the hotel and the plaintiffs' Union established the percentage of the service charge that was allocated to the captains. When plaintiffs and others complained about the captains' allocation, a negotiated settlement was reached. Thus, the few remaining captains were offered severance packages, which all but one accepted, and when no captain was assigned to room service or a hospitality event, the captains' portion of the service charge was distributed to the service staff. *See* May 25, 2011 Agreement (Exhibit 1, which is attached to Exhibit 3(b) of Alyssa Tramposch Declaration to the Motion.

There is, in any event, nothing unlawful about the captains sharing in the distribution of the service charges. The captains are part of the service staff, not managers of the hotel. *See* Barenboim v. Starbucks Corp., 698 F.3d 104, 110 (2d Cir.), *certified question accepted*, 20 N.Y.3d 914, 980 N.E.2d 528 (2012), and *certified question answered*, 21 N.Y.3d 460, 995 N.E.2d 153 (2013) ("Indeed, under our analogous FLSA jurisprudence, the fact that an employee has some supervisory responsibilities does not render him an 'employer' ineligible to retain gratuities. Rather, in the FLSA context, we would examine the economic reality of the employment relationship to determine whether shift supervisors are statutory employers, and we would almost certainly conclude that they are not because shift supervisors do not hire and fire employees, determine employees' rate of pay, or maintain employment records, and because

they exercise only limited supervision of baristas.");[75] <u>Barenboim v. Starbucks Corp.</u>, 21 N.Y.3d 460, 472, 995 N.E.2d 153, 159 (2013) (answering certified questions) ("Manifestly, captains enjoy some supervisory authority over other waitstaff, yet such responsibility does not, by itself, render them sufficiently dissimilar to waiters and busboys so as to preclude their participation in tip pools."); <u>Chan v. Sung Yue Tung Corp.</u>, 2007 WL 313483, at *21 (S.D.N.Y. Feb. 1, 2007) (citations omitted) ("Although § 196-d 'clearly prohibits part-owner employees who wield ... broad managerial authority' from retaining tips, the plaintiffs did not demonstrate that either Dai Hai Nan or Gong Gui Guan wielded broad managerial authority during the time they participated in the tip pool.  For the time Dai Hai Nan shared in the tip pool, he was not a 'general manager' but a 'senior floor captain with more limited supervisory responsibilities'.").

Because the captains are service employees, not managers, they are eligible to receive a distribution of the service charge, as the collective bargaining agreement provides.   The plaintiffs' claims based on distribution of a portion of the service charge to captains should be dismissed.


D.  <u>Defendant is Entitled to Summary Judgment on Plaintiffs' Claims under the Fair Labor Standards Act.</u>

In addition to their claims under <u>World Yacht</u>, the plaintiffs contend they were not paid the appropriate amount of overtime under the Fair Labor Standards Act.  Nevertheless, the plaintiffs are exempt from overtime under §7(i) of the FLSA, 29 U.S.C. § 207(i).  The plaintiffs earned well in excess of time and one-half of minimum wage throughout their employment at the

---

[75] It is appropriate to view both the FLSA claim and the New York Labor Law claim under the same standard with respect to the captains sharing in the service charge. *See, e.g.*, <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d 234, 241 (2d Cir. 2011); <u>Schear v. Food Scope Am., Inc.</u>, 297 F.R.D. 114, 131 (S.D.N.Y. 2014).

hotel.  They additionally derived over half of their compensation from the service charges that the hotel applied to a la carte and hospitality orders.[76]  In consequence, the plaintiffs met the requirements of section 7(i).  *See* Mechmet v. Four Seasons Hotels, 825 F.2d 1173, 1177 (7th Cir. 1987); see also Nascembeni v. Quayside Place Partners, LLP, No. 09-23322-CIV, 2010 WL 2351467, at *4 (S.D. Fla. June 11, 2010)(hotel banquet employees came within § 7(i) exemption); Rallis v. Holiday Inns, Inc., No. 85 C 1001, 1988 WL 53194, at *1 (N.D. Ill. May 13, 1988) (same).

E.  The Plaintiffs Also Are Not to be Entitled to Overtime under New York Law.

The plaintiffs additionally contend they were entitled to overtime under New York's labor law.  Although the exact parameters of their claim are unclear, they seem to contend that the overtime rate was calculated only on the basis of their hourly rate.  Even assuming that the plaintiffs are entitled to overtime, The New York Department of Labor holds that for purposes of New York law, an employee such as a room service server who derives his or her compensation from service charges, only need be paid overtime based upon their base hourly rate.  As stated by the DOL:

> This memorandum is intended to clarify the definition of "regular rate of pay" for purposes of calculating overtime rates for employees who receive mandatory gratuities or service charges.  It is, and always has been, the Department's position that tips and gratuities, whether voluntary or mandatory, are not added into the regular rate of pay and do not increase the resulting overtime rates under New York Labor Law and implementing regulations and wage orders ("state law").  The Department of Labor's March 9, 2009, opinion (RO-08-0137) should not be read to imply a contrary conclusion.

---

[76] McCurley Dec. at ¶25; Cecchini Aff. at ¶ 37; A. Rahman Dep. at pp. 30,31; A. Bouale Dep. at p. 64; A. Prado Dep. at p. 24; A. Miru Dep. at p. 35; B. Saha Dep. at p. 102,103; D. Hannah Dep. at p. 44; M. Smith Dep. at pp. 33,34; J. Ramirez Dep. at pp. 29,30; M. Haque Dep. at pp. 38, 39; P. Saha Dep. at p. 70; A. Sayot Dep. at p. 34; W. Friere Dep. at p. 26 and W. Garcia Dep. at p. 19.

N.Y.D.O.L. Memorandum of April 11, 2014, Exhibit "5" to Motion.  Thus, Amedeo is entitled to summary judgment on plaintiff's claims for overtime under New York law.

    F.   <u>New York Labor Law § 198-b is Not Applicable to the Present Case, and Plaintiffs' Third Cause of Action is Duplicative of Plaintiffs' Claims Under § 196-d and § 193</u>.

The legislative purpose of New York Labor Law § 198-b was to correct a well-entrenched system by which labor unions required kickbacks from employees in order to ensure their employment on union labor projects.  *See, e.g.*, <u>People, on Complaint of Rabinowitz v. Desowitz</u>, 166 Misc. 1, 2 N.Y.S.2d 87 (N.Y. Magis. Ct. 1938) (discussing the history of the statute); <u>People v. Sherman</u>, 201 Misc. 780, 783, 106 N.Y.S.2d 36, 40 (N.Y. Gen. Sess. 1951) (same).  Thus, it prohibits a union or employer from requiring "kickbacks" from *agreed-upon wages on pain of losing employment*.

The plaintiffs here, however, are not complaining that they were required, on pain of dismissal, to pay back money that their Union and employer agreed they were to be paid – they are contending that the agreement reached between the Union and the hotel did not *authorize* sufficient payment to the plaintiffs.   In other words, they are contesting the content of a collective bargaining agreement lawfully negotiated between the Union and the hotel.   The statute is therefore not applicable.  It is undisputed that the distribution of the service charges and the other fees the plaintiffs are demanding was made by consent of the plaintiffs' Union, and the plaintiffs were never promised the amounts reserved as administrative fees, cover charges, etc. "To violate section 198–b, it is clear that the employer must request or demand that an employee *return* ("kick back") his wages."   <u>Chevalier v. Civil Serv. Employees Ass'n, Inc.</u>, 2011 WL 1298739, at *9-10 (N.D.N.Y. Mar. 31, 2011) (emphasis added); *see also* <u>Thomas v. Meyers Associates, L.P.</u>, 39 Misc. 3d 1217(A) (N.Y. Sup. Ct. 2013) (claim under § 198-b rejected because the stockbroker plaintiffs "were not promised an 'agreed rate of wages.' … 'Thomas had

discretion to charge between a low of $50.00 and a high of 5% of the transaction as a commission'.").

This case is more like <u>Horowitz v. La France Indus.</u>, 274 A.D. 46, 79 N.Y.S.2d 794 (App. Div. 1948), where an adjustment made to the plaintiff's compensation in the regular course of business was held to be lawful. <u>Id</u>. 274 A.D. at 48, 79 N.Y.S.2d at 797.  In the present case, the statute is even less applicable, because the plaintiffs' own Union had negotiated with the hotel regarding the appropriate distribution of the service charge and other fees, and the plaintiffs' employment was never threatened.  <u>In re Starbucks Employee Gratuity Litig.</u>, 264 F.R.D. 67 (S.D.N.Y. 2009), *aff'd sub nom.* <u>Barenboim v. Starbucks Corp.</u>, 549 F. App'x 1 (2d Cir. 2013), refused to find a violation of § 198-b due to including shift supervisors in tip distributions: "Plaintiffs similarly have failed to proffer any evidence that Defendant's policy constituted an illegal 'kick-back' of wages within the meaning of Section 198-b, such that engaging in the tip distribution policy would be a condition of obtaining or retaining employment as a Barista with Starbucks, which is a necessary element of a claim asserted under this provision."  264 F.R.D. at 73-74.

If the plaintiffs are interpreting the statute as simply another challenge to the agreement reached by their Union and the hotel, their claim under § 198-b is merely a repetition of their claim under § 196-d, and therefore should be dismissed as duplicative.  *See, e.g.*, <u>Gillian v. Starjem Restaurant Corp.</u>, No. 10-cv-6056 (S.D.N.Y. April 19, 2011), where the court dismissed tip claims under §§ 193 and 198-b as duplicative of the claims under § 196.        Plaintiffs' claim under § 198-b is meritless or, at best, duplicative of their other claims.  The Third Cause of Action should therefore be dismissed.

G. Plaintiffs Have Not Identified Any Improper Recordkeeping by the Hotel, Particularly As it Was the Plaintiffs Themselves Who Calculated the Distribution of the Service Charges.

Plaintiffs have made no attempt to pursue their Fourth Cause of action, for allegedly deficient record-keeping under New York Labor Law § 195.  They asked not a single deposition question about the subject, did not complain of any such deficiencies during their own depositions, nor did they request evidence of compliance with the statute in their written discovery, other than general requests for payroll records.  *Cf.* Salomon v. Adderley Indus., Inc., 960 F. Supp. 2d 502, 511 (S.D.N.Y. 2013) (where plaintiffs made no attempt to pursue amendment to add this claim in prior pleadings, court refused to allow the addition of a claim under 195(1)(a)).

In any event, defendant has manifestly complied with its obligations under the statute. The statute requires that employees be provided with a written document evidencing their rates of pay and other relevant information, that they receive wage statements with each pay, that employees be notified of changes to their pay in advance, that changes to leave policies be posted, that the employer maintain payroll records, and that employees be notified in writing when terminated from employment.  Labor Law § 195(1)-(6).  The purpose of the statute is to ensure that "employees receive notice of important decisions made by their employer."  Cohen v. Stephen Wise Free Synagogue, No. 95 CIV. 1659 (PKL), 1996 WL 159096, at *3 (S.D.N.Y. Apr. 4, 1996).  Another purpose is to lighten the burden of proof on an employee seeking unpaid wages if an employer should fail to comply with its obligations.  Islam v. Hossain, 44 Misc. 3d 1216(A) (N.Y. Civ. Ct. 2014) ("If any employer does not maintain these records, it is the burden of the uncompensated employee to show the amount of uncompensated work completed 'as a matter of just and reasonable inference'."); Lanzetta v. Florio's Enterprises, Inc., 763 F. Supp. 2d

615, 618 (S.D.N.Y. 2011).  But in the present case, the plaintiffs do not claim that they were not paid according to their written contract, nor do they claim that they lacked full knowledge of their pay and hours and were provided with all necessary paperwork – indeed, they did some of the paperwork themselves, specifically the "tip sheets".

The plaintiffs' employment is governed by a collective bargaining agreement negotiated by their Union that sets out very clearly their rates of pay, a copy of which each received (indeed, many of the plaintiffs are or were Union delegates).  *Cf*. Linwood v. United Activities Unlimited, Inc., 43 Misc. 3d 131(A), 988 N.Y.S.2d 523 (App. Term 2014) (defendant's Policy and Procedure Manual was adequate to comply with the dictates of Labor Law § 195(5)).  As Gus Cecchini has testified, defendants maintained accurate payroll records and the plaintiffs admitted at their depositions that accurate payroll records were provided to them for each pay period.  *See* Cecchini Aff. at ¶ 44 and record evidence cited therein.  Any changes to their pay were ratified by the plaintiffs' Union (and the individual plaintiffs) in written Supplemental Agreements.  There has been no allegation in this lawsuit that the plaintiffs were somehow unaware of how they were being paid.  Indeed, the unrest that led to this lawsuit arose specifically because they did know, and they were dissatisfied.  The plaintiffs themselves were the ones who calculated the tip sheets after each shift.

## CONCLUSION

Amedeo respectfully requests it be granted summary judgment on all the plaintiffs' claims in this action.

Respectfully submitted, this 12th day of December, 2014.

.

25

**STOKES WAGNER HUNT MARETZ & TERRELL**


By:      _/s/ John R. Hunt_____
         John R. Hunt (admitted *pro hac vice*)
         Paul E. Wagner (PW-0177)
         3593 Hemphill Street
         Atlanta, Georgia 30337
         (404) 766-0076 - Telephone
         (404) 766-8823 - Facsimile
         jhunt@stokeswagner.com
         pwagner@stokeswagner.com
         Attorneys for Defendant Amedeo Hotels LP

26

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**Brooklyn Division**

| | | |
|---|---|---|
| RUBEN DIAZ, RENE FERNANDEZ,<br>MOHAMMED ISMAT, PRADIP SAHA,<br>RAMENDRA SAHA, MAXINE SMITH,<br>ABDUR RAQUIB, JOHNNY RAMIREZ,<br>MADGY SAAD, WALTER FREIRE,<br>MOZIBUR RAHMAN,<br>CHRISTOPHER STAVROPOULOS,<br>ABDUR RAHMAN, SYED AHMED,<br>WALTER GARCIA, ASHIF MIRU,<br>BISWA SAHA, SAYOT ALPHONSE,<br>ALBERTO PRADO,<br>MAURICE SCHWARTE,<br>ABELLA BOUALE, DENZIL HANNAH,<br>MILAD BARSOUM,<br>MOAZZEMUL HAQUE, and<br>ARUN SAHA,<br><br>     Plaintiffs,<br><br>     v.<br><br>AMEDEO HOTELS LIMITED<br>PARTNERSHIP, NWPH, LLC,<br>NORTHWOOD HOSPITALITY, LLC<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:12-cv-04418-JMA |

**CERTIFICATE OF SERVICE**

     I hereby certify that I have this day sent the foregoing document to counsel of record listed below via U.S. Mail, postage prepaid and via electronic mail in PDF form.

| | |
|---|---|
| David Wims, Esq.<br>Law Offices of David Wims<br>Attorneys for Plaintiffs<br>1430 Pitkin Avenue, 2nd Floor<br>Brooklyn, New York 11233<br>davidwims@hotmail.com | Judith Stoll, Esq.<br>Alexander Soric, Esq.<br>Kane Kessler, P.C.<br>1350 Avenue of the Americas<br>New York, NY 10019<br>jstoll@kanekessler.com |

Dated: December 12, 2014

                                      Stokes Wagner Hunt Maretz & Terrell
                                        Attorneys for Defendant Amedeo Hotels LP

                                      By: _____ */s/ John R. Hunt*_____
                                             John R. Hunt

4830-4704-6688, v. 1

28