**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------X
RUBEN DIAZ,
RENE FERNANDEZ,
MOHAMMED ISMAT,
PRADIP SAHA,
RAMANDRA SAHA,
MAXINE SMITH,
ABDUR RAQUIB,
JOHNNY RAMIREZ,
MADGY SAAD,
WALTER FREIRE,
MOZIBUR RAHMAN,
CHRISTOPHER STAVROPOULOS,
ABDUR RAHMAN,
SYED AHMED,
WALTER GARCIA,
ASHIF MIRU,
BISWA SAHA,
SAYOT ALPHONSE,
ALBERTO PRADO,
MAURICE SCHWARTE,
ABELLA BOUALE,
DENZIL HANNAH,
MILAD BARSOUM,
MOAZZEMUL HAQUE,
ARUN SAHA,

Civil Action No.  12CV4418
        (JMA)

**PLAINTIFFS'**
**MEMORANDUM OF LAW**
**IN OPPOSITION TO**
**DEFENDANTS' MOTIONS FOR**
**SUMMARY JUDGMENT**

Plaintiffs,

-against-

AMEDEO HOTELS LIMITED PARTNERSHIP,
NWPH, LLC,
NORTHWOOD HOSPITALITY, LLC,

Defendants.

------------------------------------------------------X

1

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT…………………………….......2

FACTS……………………………………………………...3

LEGAL STANDARDS…… …………………………………4

ARGUMENT………………………………………………5

I.    DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' LABOR LAW CLAIMS……………………………….……………...5

     A. Hospitality Wage Order…………………………..6
     B. Defendants' service charges are gratuities…………….7
     C. Defendants failed to give sufficient notice…………….7
     D. Defendants failed to pay all service charges……………8
     E. Captains are not proper tip pool participants……………9
     F. The LMRA does not preempt Plaintiffs' claims………..11

II.    DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' OVERTIME CLAIMS…………………………………….........13

     A. Fair Labor Standards Act……………………….……13
     B. New York Labor Law…………………………….....18

III.    CONCLUSION………………………………………..20

## PRELIMINARY STATEMENT

Plaintiffs commenced this litigation in the Supreme Court of the State of New York, County of Kings, on September 8, 2011, seeking unpaid wages, gratuities, overtime and declaratory and injunctive relief from Defendants in connection with the Defendants' employment of Plaintiffs as food and beverage servers in the in-room dining department of the New York Palace Hotel ("Hotel"). Defendants removed this proceeding from state court based on federal question jurisdiction pursuant to 29 U.S.C. §§ 1331 and 1441 on September 5, 2012.

The operative complaint - the Fifth Amended Complaint, contains seven statutory causes of action.  The state claims include Labor Law ("NYLL") §§ 196-d, 193, 198-b, 191, 195 and 652; and implementing regulations found at 12 N.Y.C.R.R. § 146.  The federal claims arise under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 207.

At issue is the parties' entitlement to monies Defendants charged their customers as mandatory service charges on in-room dining a la carte orders and hospitality functions and/or events.  Plaintiffs allege that Defendants retained portions of said mandatory service charges in lieu of paying the same to Plaintiffs, in violation of New York law.  In addition to the mandatory service charges, Plaintiffs alleged that Defendants' 'labor fees,' 'butler fees' and 'cover charges' were mandatory gratuities. Plaintiffs also allege that Defendants excluded the service charges and 'butler fees' from the calculation of Plaintiffs' 'regular rate' for overtime purposes.  Plaintiffs hereby withdraw their claims for 'labor fees' and 'cover charges' under the first, second, third and fifth causes of action.  Plaintiffs also hereby withdraw in their entirety the third and fourth causes of action in the Fifth Amended Complaint.

Defendant Amedeo Hotels Limited Partnership operated the Hotel until July 2011.  After that date, Defendants NWPH, LLC and Northwood Hospitality, LLC owned and/or operated the Hotel through the present date.  Plaintiffs are long time employees of Defendants as food and beverage

2

servers in the Hotel's in-room dining department and members of a union - Local 6, New York Hotel & Motel Trades Council, AFL-CIO ("Local 6").  At all times herein relevant, Defendants' employment of Plaintiffs was subject to a collective bargaining agreement between Local 6 and Defendants.

The instant action is before this Court on Defendants' concurrent motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  In opposition to Defendants' motions, Plaintiffs submit this Memorandum of Law, two (2) Local Rule 56.1 Counterstatements of Facts and the Declaration of David C. Wims, Esq.  For the following reasons, Defendants' motions should be denied in their entirety, because:

1. Questions of fact exist with respect to whether Defendants' captains provided direct food service as a principal duty and/or had more than de minimis direct customer contact;

2. Questions of fact exist with respect to whether Defendants paid to Plaintiffs all service charges collected from their customers;

3. Questions of fact exist with respect to whether Defendants paid to Plaintiffs all tips or gratuities collected from their customers;

4. Questions of fact exist with respect to the amounts of service charges, tips and/or gratuities paid to Defendants by their customers;

5. Plaintiffs were and are entitled to overtime under the FLSA and NYLL calculated to include the service charges and 'labor fees' Defendants paid to Plaintiffs, and the commissioned salesperson exemption was and is inapplicable to Plaintiffs servers

## FACTS

Plaintiffs respectfully refer this Court to their Local Rule 56.1 Counterstatements of Facts.

3

## LEGAL STANDARDS

### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also, e.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Humphreys v. Cablevision Sys. Corp.*, 553 Fed. Appx. 13, 14 (2d Cir. 2014); *Connolly v. Calvanese*, 515 F. App'x 62, 62 (2d Cir. 2013); *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 580 (2d Cir. 1991). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Alzawahra v. Albany Med. Ctr.*, 546 F. App'x 53, 54 (2d Cir. 2013); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994); *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. See, e.g., *Celotex Corp. v. Catrett*, 477 U.S. at 323; *Dolan v. Cassella*, 543 F. App'x 90, 90 (2d Cir. 2013).

To defeat a summary judgment motion, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed." Fed. R. Civ. P. 56(c)(1); see, e.g., *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587; *Weinstock v. Columbia*

4

*Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (at summary judgment, "[t]he time has come . . . 'to put up or shut up'"), cert. denied, 540 U.S. 811 (2003).  In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.

The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d at 37.  In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. See, e.g., *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

## ARGUMENT

### I.   DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' LABOR LAW 196-D CLAIMS

Section 196-d states that "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." NYLL § 196-d.  It further states that § 196-d shall not be construed as affecting "the sharing of tips by a waiter with a busboy or similar employee." Id.

### A.  New York Hospitality Wage Order

Enacted in January 2011, the Hospitality Wage Order ("HWO") contains the New York Department of Labor's ("DOL") tip-splitting policies, inter alia.  Among its mandates are that participation in a tip pool under Labor Law § 196-d "shall be based upon duties and not titles[.]" 12 N.Y.C.R.R. § 146-2.14(e).  The HWO limits tip-pool eligibility to workers who "perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental" Id.  The HWO enumerates examples of tip pool eligible job titles, including but not limited to "captains *who provide direct food service to customers.*" Id. at § 146-2.14(e)(8) (emphasis added).  Additionally, the HWO limits tip pool participation to 'food service workers'. Id. at § 146-2.16(b).  The HWO defines 'food service workers' as "any employee who is *primarily* engaged in the serving of food or beverages to guests, patrons or customers in the hospitality industry[.]" Id. at § 146-3.4(a) (emphasis added).

Finally, the HWO requires employers to pay employees in full charges that are gratuities or purport to be gratuities. Id. at § 146-2.18(a).  Along those same lines, there is a rebuttable presumption that any charge in addition to those for food, beverage, lodging, etc is a charge purported to be a gratuity. Id. at § 146-2.18(b).  The HWO also places strict requirements on employers imposing administrative fees or charges on their customers to notify patrons clearly that said charges are not gratuities. Id. at § 146-2.19(a).  The employer bears the burden to show by clear and convincing evidence that notification was sufficient to ensure that a reasonable customer would not think the administrative fee or charge is a gratuity. Id. at § 146-2.19(b).  Said notification must be in at least 12 point font. Id. at § 146-2.19(c).  Perhaps most importantly, the HWO has retroactive effect. *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 472 n.4 (2013).  As a result, contrary to Defendants representations in their moving papers, the HWO and its requirements apply for the entire time period relative to the instant suit.

6

### B. Defendants' service charges are charges that purport to be gratuities

In *Samiento v. World Yacht*, 10 F.3d 70, 89 (2008), the Court of Appeals held that "the statutory language of Labor Law § 196-d can include mandatory charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees. An employer cannot be allowed to retain these monies."

In the case at bar, Defendants imposed mandatory service charges on their customers and Plaintiffs allege that Defendants failed to pay all of those monies to Plaintiffs and the service employees who provided the service. Complaint ¶¶36-40. The standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer as this standard is consistent with the purpose of Labor Law § 196-d. *Samiento*, 10 F.3d at 79. Although decided in 2008, *Samiento's* holding has been given retroactive effect. *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 283 (S.D.N.Y 2011); *Ramirez v. Mansions Catering, Inc.*, 74 A.D.3d 490, 492 (1st Dept. 2010); *Spicer v. Pier Sixty, LLC*, 269 F.R.D. 321, 328 (S.D.N.Y 2010).

There is no doubt that Defendants' mandatory service charges are gratuities or charges purported to be gratuities. Given Defendants' insufficient notice under the HWO, as discussed immediately below, a reasonable patron would believe that said service charges were gratuities for the service workers providing said service. As a result, Defendants should not be allowed to retain these monies and their summary judgment motions on this issue should be denied.

### C. Defendants failed to give customers sufficient notice of their retention of portions of the service charges

Defendants argue that they sufficiently notified their customers of their retention of administrative fees in connection with a la carte and hospitality event/functions for the entire relevant period by using their HEO and BEO forms. Defendant Amedeo's Brief ("Amedeo Brief") in support at p.9; Defendants

7

NWPH & Northwood's Memorandum ("NWPH Mem.") in support at p.6.  Plaintiffs argue the opposite.  First, Defendants used several different HEO and/or BEO forms, some of which indicated that management would keep an administrative fee, some of which did not. Wims Declaration ("Wims Dec.") Exhibit 1.  Additionally, Defendants have not made clear when the various forms were used or under what circumstances. Amedeo Brief at p.9.  Defendants also used other forms. Wims Dec. Exh. 1. Some of the forms said different or incorrect percentages/amounts for the administrative fee. Id.; NWPH Mem. at p.6.

Many of the forms do not comply with the HWO because the font notifying customers of the administrative fee is too small.  The HWO requires the statement about an administrative fee to be in 12 point font in a prominent place. 12 N.Y.C.R.R. § 146-2.19(c).  Both Defendants failed to satisfy that requirement.  The statements about an administrative fee are at the bottom of the page of the HEOs and/or BEOs, in an obscure location.  This too is prohibited by the HWO. Id.

Most importantly, Defendant Amedeo admits that it collected administrative fees without notifying its customers prior to 2007. Amedeo Brief at p.9.  Since this action was filed in 2011, the relevant period is 2005-present.  For the above reasons, Defendants' notice to their patrons regarding Defendants' retention of administrative fees was insufficient as a matter of law and there are related questions of fact.  In any event, Defendants have not demonstrated by *clear and convincing evidence* that their respective notices were sufficient for the entire relevant time period.  As a result, Defendants' motions should be denied on this issue.

### D. Defendants failed to pay Plaintiffs all service charges imposed on customers

Defendants failed to pay all service charges collected to Plaintiffs.  Often, Plaintiffs received less than their entitlement under the NYLL and CBA.Wims Dec. Exh. 2.  For example, it appears that in addition to Defendants' mandatory service charge, Defendants' customers sometimes left actual,

8

voluntary tips, via credit card or cash, some of which Defendants failed to pay to Plaintiffs. Id.  In addition, managers took a portion of the a la carte **and** hospitality event tip pools, whether or not they participated in the service. Saad trans. at p.91:8-14.

### E. Defendants' captains were not and are not proper tip pool participants

Defendants' captains are and were managers and/or agents of the employer and therefore not proper participants in Defendants' tip pools.  In the alternative, Defendants' captains are dissimilar from bus boys in a number of significant ways.  The Captains acted as managers in the absence of the actual manager. Ismat trans. at p.36:2-5; p.36:18-24; p.40:3-13.  They also exercised managerial discretion. Id.  Finally, they were perceived by Plaintiffs as managers. Saad trans. at p.43:18-21; Ismat trans. at p.35:10-12.  Defendants themselves submit documents that support the allegation that the captains are managerial, or at least interchangeable therewith, as Defendants' Cecchini affidavit, Exhibit E states at page 3, ¶B3 that "…the Hotel may have managers of servers perform the functions of Room Service Captains[.]"

In addition, Defendants' captains did not provide direct customer service. Ismat trans. at pp.97-98.  This is true both of in-room dining a la carte orders and hospitality events or functions. Id.  Plaintiffs testified at deposition that captains never served food or beverages and were not allowed to do so. Saad trans at pp.114-118.  The only captain currently employed by Defendants, Mr. Moustapha, testified that he rarely served customers. Wims Dec. Exh. 6. at pp.19-32.  Although Defendants NWPH and Northwood submitted an affidavit from captain Moustapha, it contradicts the affiant's prior deposition testimony.  When deposed, Mr. Moustapha indicated that he never served patrons and had no contact with them. Id.  In his affidavit, attached to Defendants moving papers on the instant motion, he says he had substantial and recurring customer contact. Moustapha Aff. at ¶¶8-11.  However, the

sham issue of fact doctrine should apply to prevent Defendants from changing their agent's prior testimony.

The "sham issue of fact" doctrine "prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony." *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) (per curiam); see also *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony."). Equity should prevent Defendants from eliminating issues for the fact finder at trial by contradicting prior deposition testimony. Because there are questions of fact about the captains' actual duties, and the frequency and extent of food service provided by captains, Defendants are not entitled to summary judgment on this issue and their motions should be denied.

Defendants are correct that restaurant captains often share in employers' tip pools without violating the law. NWPH Mem. at pp.16-19. However, the Hotel's in-room dining department is unlike most restaurants in that Defendants' in-room dining captains never serve a la carte or hospitality event/function patrons. Saad trans. at pp.114-118; Ismat trans. at pp.97-99. Only the servers serve food. Id. Further, the HWO says that participation in tip pooling shall be based on duties and not titles. 12 N.Y.C.R.R. § 146-2.14(e). As a result, Defendants' in-room dining captains may not participate in the Hotel's tip-pool and Defendants are not entitled to summary judgment on this issue.

As indicated above, the Court of Appeals concluded in *Samiento* that in terms of participation in an employer's tip pool, "the line should be drawn at meaningful or significant authority or control over subordinates" and indicated that such authority or control "might include the ability to discipline subordinates, assist in performance evaluations or participate in the process of hiring or terminating

10

employees, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation." Id. By no stretch of the imagination do Defendants' captains *primarily* engage in serving food and beverages, which is what is required under the HWO.  As such, Defendants' captains are not proper participants in Defendants' a la carte or hospitality event/function tip pools.

As the Court of Appeals indicated, "employer-mandated tip splitting should be limited to employees **[*472]** who, like waiters and busboys, are ordinarily engaged in personal customer service, a rule that comports with the "expectation[s] of the reasonable customer" *Barenboim v. Starbucks*, 21 N.Y.3d 460, 471 (2012) (quoting *Samiento v. World Yacht*, 10 F.3d 70 (2008)).  It stands to reason then, based on the above, that Defendants are not entitled to summary judgment on this issue and their motions should be denied.

### F.  The LMRA does not preempt Plaintiffs' Labor Law claims

Alternatively, Defendants argue that Plaintiffs' claims for gratuities, premised under Labor Law §§ 196-d, 193 and 191 are preempted by federal law, specifically section 301 of the Labor Management Relations Act ("LMRA").  Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties[.]" 29 U.S.C. § 185(a).  The Supreme Court has interpreted this section to preempt state law claims "founded directly on rights created by collective-bargaining agreements" as well as "claims 'substantially dependent on an analysis of a collective-bargaining agreement' " *Lingle v Norge Div. of Magic Chef, Inc.*, 486 US 399, 410 and n 10 (1988) (quoting *Electrical Workers v Hechler*, 481 U.S. 851, 859 n.3 (1987).

According to the Court, preemption is necessary "to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes" Id. at 404. Any claim that challenges a provision in a CBA must be brought under section 301. *Allis-Chalmers Corp. v Lueck*, 471 U.S. 202, 210 (1985); *Vera v Saks & Co.*, 335 F3d 109, 116 (2d Cir 2003) ("plaintiff's challenge to the lawfulness of a term of the CBA will require substantial interpretation of the CBA").

Section 301, however, does not preempt state claims when state law confers an independent statutory right to bring a claim *Livadas v Bradshaw*, 512 U.S. at 123 ("(section) 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law"); *see also Hawaiian Airlines, Inc. v Norris*, 512 U.S. 246, 260 (1994) ("Clearly, § 301 does not grant the parties to a (CBA) the ability to contract for what is illegal under state law"). " '[A]s long as the state-law claim can be resolved without interpreting the [CBA] itself, the claim is "independent" of the agreement for § 301 preemption purposes' ". *Mack v Metro-North Commuter R.R.*, 876 F Supp 490, 492 n 1 (SD NY 1994) (emphasis omitted) (quoting *Norris*, 512 U.S. at 262). Even if resolution of a state-law claim "involve[s] attention to the same factual considerations as the contractual determination . . . such parallelism [does not mandate preemption][.]" *Lingle*, 486 U.S. at 408). A Defendant's reliance on the CBA is not enough to "inject[ ] a federal question into an action that asserts what is plainly a state-law claim" *Caterpillar Inc. v Williams*, 482 U.S. 386, 399 (1987).

It is well established that the NYLL is not preempted by the LMRA. See, e.g., *Alderman v. 21 Club Inc.*, 733 F. Supp. 2d 461, 467 (S.D.N.Y. 2010); see also *Tamburino v. Madison Square Garden, LP*, 115 A.D.3d 217, 220; 980 N.Y.S.2d 83 (1st Dept. 2014); *Isaacs v. Central Parking Systems of NY, Inc.*, 2012 U.S. Dist. LEXIS 38103 at *6 (E.D.N.Y. 2012). Defendants and Plaintiffs' union may not

contract in the CBA for what is illegal under state law. *Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427, 430 (7th Cir. 2010).

Here, Plaintiffs seek to enforce their state statutory rights, as opposed to rights granted by or under the applicable CBA. Complaint ¶¶46-65. Further, Plaintiffs filed a grievance with their union to enforce their rights to gratuities under the CBA. Wims Dec. Exh 8. Although that was done two years ago, the union has done nothing to date. In this case, the relevant statutes provide greater wage rights than the CBA in terms of gratuities. The operative complaint does not allege a breach of the CBA. The Court need not interpret the CBA to decide this issue. For these reasons, Defendants arguments that Plaintiffs' NYLL claims are preempted by the LMRA are without merit. The Court should deny Defendants' motions on this issue.

## II.   DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' OVERTIME CLAIMS

### A.   FLSA

The FLSA was enacted to "correct and . . . eliminate" "conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a)-(b); *Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 97 (2d Cir. 2009). "In turn, courts construe the FLSA 'liberally to apply to the furthest reaches consistent with congressional direction.'" *Jacobs*, 577 F.3d at 97 (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)). Courts should be mindful of the Supreme Court's admonition that because FLSA's provisions "are remedial and humanitarian in purpose," the statute therefore "must not be interpreted or applied in a narrow, grudging manner." *Tenn. Coal, Iron & R.R. Co. v. Muscoda*, 321 U.S. 590, 597 (1944).

The FLSA provides federal minimum wage and overtime protections for employees that fall within its scope. *See* 29 U.S.C. § 206 (minimum wage) and § 207 (overtime).  Specifically, the FLSA requires employers to pay time and one-half of an employees' regular rate for all hours worked beyond forty (40) per week. Id.  Since FLSA requires an employer to compensate its employees for overtime "at a rate not less than one and one-half times the regular rate at which he is employed," 29 U.S.C. § 207(a)(1), it is necessary to determine an employee's 'regular rate' of pay for the period for which he claims entitlement to damages.

The regular rate is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). An employee's regular rate is an hourly rate of pay, determined by dividing the employee's weekly compensation by the number of hours for which that compensation is intended. 29 C.F.R. § 778.109; 29 C.F.R. § 778.113(a).  FLSA deems the regular rate of pay to include "all remuneration for employment paid to, or on behalf of, the employee," 29 U.S.C. § 207(e).  Unless a benefit paid to an employee falls within one of these statutory exclusions, it must be included in determining the employee's regular rate. 29 C.F.R. § 778.200(c) (1987); 2 Lab. L. Rep. (CCH) para. 25,510, 25,510.40.

> No employer shall be deemed to have violated . . . [29 U.S.C. § 207(a)] by employing any employee of a retail or service establishment for a work week in excess of . . . [40 hours], if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly . . . [wage], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i). Thus, in order to show that the Plaintiffs were exempt workers, Defendants must show: (1) Defendants qualify as a retail or service establishment; (2) each Plaintiff received at least 50% percent of his income in the form of "commissions"; and (3) each Plaintiff was paid at least one and one-half times the minimum wage for all hours of work performed. See *Schwind v. EW &*

14

*Associates, Inc.*, 371 F. Supp. 2d 560, 563 (S.D.N.Y. 2005); see also 29 C.F.R. §§ 779.410-412.

"Because the FLSA is a remedial law, exemptions to the overtime pay requirement are narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *In re Novartis Wage and Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010) (internal citations and quotations omitted), abrogated on other grounds by *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012). "To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." *A.H. Phillips, Inc., v. Walling*, 324 U.S. 490, 493 (1945). Accordingly, "an employer bears the burden of proving that its employees fall within an exempted category of the Act." *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991).

First it should be noted that Defendants' moving papers make much of the relatively high compensation rate at which they paid Plaintiffs. Amedeo Brief at p.9; NWPH Mem. at p.8. Defendants seem to imply that because Plaintiffs were not low wage workers, the FLSA is inapplicable to Plaintiffs. Nothing could be further from the truth, as "[Employees] are not to be deprived of the benefits of the Act simply because they are well paid or because they are represented by strong bargaining agents." *Jewell Ridge Coal Corp. v. United Mine Workers*, 325 U.S., at 161, 167 (1945).

Defendants do not challenge FLSA coverage in their moving papers. Both Defendants claim that the FLSA retail and service establishment exemption found at 29 U.S.C. § 207(i) was and is applicable to this case. Amedeo Brief at p.20; NWPH Mem. at p.24. Defendants allege that all requirements of the retail and service establishment exemption are satisfied here. Id.

Plaintiffs concede that the Hotel is a retail and service establishment and that Defendants at all times paid them one and one-half times the minimum wage. However, Plaintiffs allege that they

15

received less than half of their compensation for employment from Defendants' service charge, or commissions, as the FLSA refers to them.  Defendants' attached payroll records to their respective motions that they claim entitle them to summary judgment on Plaintiffs' FLSA overtime claims. Cecchini Affidavit Exhibit J (attached to Defendants NWPH and Northwood's motion).

In fact, it is clear from the payroll records that the retail and service establishment exemption is not applicable to the case at bar.  Defendants' records demonstrate that more than half of Plaintiffs' *cash* compensation for employment comes from service charge or commissions.  Defendants failed to include in the equation the *non-cash* remuneration Defendants pay Plaintiffs, like complimentary meals, health insurance and pension contributions.  Pursuant to the applicable CBA, Defendants pay contributions to third parties for Plaintiffs' health insurance and pensions in the approximate amount of 30% of wages paid (18.5% for medical, life and disability; 2% for dental; 9% for pension; .5% for prepaid legal). Wims Dec. Exh 7.

These amounts, and all other remuneration from employment, must be included in the calculation of an employees' total compensation for purposes of the FLSA retail and service establishment exemption. 29 C.F.R. § 779.415(a).  This includes those components of compensation excludable from the calculation of the 'regular rate' under the FLSA. Id.  The non-cash compensation may only be excluded from the calculation under narrow circumstances not present here. 29 C.F.R. § 779.415(a).  The regulation provides in relevant part that:

> In determining for purposes of section 7(i) whether more than half of an employee's compensation "represents commissions on goods or services" it is necessary first to total all compensation paid to or on behalf of the employee as remuneration for his employment during the period. All such compensation in whatever form or by whatever method paid should be included, whether calculated on a time, piece, incentive or other basis, and amounts representing any board, lodging or other facilities furnished should be included in addition to cash payments, to the extent required by section 3(m) of the Act and part 531 of this chapter. Payments excludable from the employee's "regular rate" under section

16

7(e) may be excluded from this computation if, but only if, they are payments of a kind not made as compensation for his employment during the period. (See part 778 of this chapter.).

Id.

Defendants admit that the 'labor fees' are hourly compensation, as opposed to commissions on goods or services. Amedeo Brief at p.17; NWPH Mem. at p.22.  As the below table shows[1], Plaintiffs received less than half of their total compensation for employment from Defendants' service charge, when employer contributions for fringe benefits are taken into account.  Only the one part-time employee – Walter Friere, earns more than half of his compensation from Defendants' service charge according to the table.  Further, the earnings values in the tables do not include the value of employer provided meals, such that when considered, even Mr. Friere is not exempt.  In light of the FLSA's remedial purposes and the fact that exemptions are to be narrowly construed against employers seeking to assert them, Defendants have not proven their entitlement.  As a result, Defendants calculations are incorrect, they have not met their burden and their motions for summary judgment on this issue should be denied.

| Employee | Year | 4th Qtr Earn. | 130% of 4th Qtr Earn. | 1/2 of 130% | Service Charge |
|----------|------|---------------|------------------------|-------------|----------------|
| M. Ismat | 2013 | $ 33,675.34 | $ 43,777.94 | $ 21,888.97 | $   18,223.20 |
| W. Freire | 2013 | $ 19,786.82 | $ 25,722.87 | $ 12,861.43 | $   12,882.35 |
| A. Raquib | 2013 | $ 38,145.50 | $ 49,589.15 | $ 24,794.58 | $   20,103.98 |
| M. Saad | 2013 | $ 37,284.67 | $ 48,470.07 | $ 24,235.04 | $   19,245.17 |
| R. Saha | 2013 | $ 34,869.90 | $ 45,330.87 | $ 22,665.44 | $   18,844.76 |
| C. Stavropoulos | 2013 | $ 28,946.31 | $ 37,630.20 | $ 18,815.10 | $   15,959.20 |

---

[1] Table data comes from and is based on Defendants NWPH & Northwood's Cecchini affidavit Exhibit J.

17

### B. NYLL

The New York Labor Law is quite similar to the FLSA in that it requires employers to pay a minimum hourly wage to employees, and mandates an overtime compensation scheme. See NYLL § 650 *et seq*.; see also *Gunawan v. Sake Sushi Rest.*, 897 F.Supp.2d 76, 84 (E.D.N.Y. 2012) ("The NYLL mirrors the FLSA in most but not all respects."). Unlike the FLSA, the HWO – the state wage order applicable pursuant to the NYLL, does not contain a retail and service establishment exemption. See HWO. As a result, Defendants cite to a New York Department of Labor opinion letter and memorandum for the proposition that the NYLL does not require the service charge, or commissions, to be included in the calculation of the regular rate for overtime purposes. Amedeo Brief at p.21; NWPH & Northwood Mem. at p.26.

However, as indicated, the NYLL tracks the FLSA, which requires commissions to be included in the regular rate. 29 C.F.R. §§ 778.116-117; see e.g., *Donovan v. Grantham*, 690 F.2d 453, 457 (5th Cir. 1982) (describing failure to include commissions when calculating overtime pay as "violation of the department regulations defining 'regular' and overtime pay" (citing 29 C.F.R. § 778.117)). Also, § 218(a) of the FLSA, known as the savings clause, provides, in relevant part, that, "[n]o provision of this chapter or of any order there under shall excuse noncompliance with any Federal or State law or municipal ordinance *establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter.*" 29 U.S.C. § 218(a) (emphasis added). In other words, the Savings Clause operates only to allow states, municipalities, or the federal government to pass more protective wage and hour laws in the labor law context. The FLSA preempts laws with lesser protections. It sets the floor for wages owed and the ceiling for hours that can be worked without premium pay. Since the FLSA requires overtime payment in the case at bar, as explained above, the NYLL may not give lesser protections.

18

In New York, the miscellaneous wage order (12 N.Y.C.R.R. § 142) incorporates the FLSA exemptions. 12 N.Y.C.R.R. § 142-2.2.  As a hotel and/or restaurant, Defendants are covered not by the miscellaneous wage order, but by the HWO. 12 N.Y.C.R.R. § 146-3.1. Unlike the miscellaneous wage order, the HWO does not incorporate the FLSA exemptions. See 12 N.Y.C.R.R. § 146-3.2; see also Dep't of Labor Counsel Opinion Letter RO-08-0137.  In fact, the HWO is more protective than the FLSA when it comes to overtime, inasmuch as the regular rate there under is determined by dividing weekly earnings *by the lesser of* forty (40) hours or actual hours worked. 12 N.Y.C.R.R. § 146-3.5.

It is clear that New York and other states are free to legislate in the labor law context in order to set a *higher* minimum wage or a lower maximum workweek. *DeSilva v. N. Shore-Long Island Jewish Health Sys.*, 770 F. Supp. 2d 497 (E.D.N.Y. 2011) (emphasis added); see also 29 C.F.R. § 531.26 and 29 C.F.R. § 778.5.  Therefore, Defendants' arguments that the NYLL does not require commissions or service charges to be included in the calculation of overtime are without merit and contrary to law.[2]

In the alternative, the opinion letter and memorandum relied on by Defendants are ultra vires inasmuch as they contradict the plain language of the HWO's definition of 'regular rate' found at 12 N.Y.C.R.R. § 146-3.5.  They also contradict the definition of 'regular rate' found in the prior, applicable wage orders. See 12 N.Y.C.R.R. § 137-3.5 (Restaurant); 12 N.Y.C.R.R. § 138-4.16 (Hotel). It is well established that the Department's statutory interpretations are only entitled to deference if rational and reasonable. See *Matter of Chesterfield Assoc. v New York State Dept. of Labor,* 4 NY3d 597, 604 (2005), quoting *Matter of Howard v Wyman,* 28 NY2d 434, 438 (1971).  In this case both rationality and reasonableness are lacking based on the above and as such the opinion letter and memorandum are not entitled to deference.

---

[2] If Defendants are found to have miscalculated Plaintiffs' overtime, the 'labor fees' must also be included in the calculation, in addition to the service charges and night shift differentials.

Finally, to give the opinion letter and memorandum deference is to violate the federal mandate that the FLSA sets the national floor in terms of minimum wage and overtime. It is also well established that when state and federal law conflict, the latter controls pursuant to the Supremacy Clause. *Winfield v. Babylon Beauty Sch. of Smithtown Inc.*, 2015 U.S. Dist. LEXIS 28351 at *37 (E.D.N.Y.); *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008) (noting that federal law preempts a state law "when compliance with the state statute would frustrate the purposes of the federal scheme.") (quoting *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982). New York does not have authority to lower the protections of the FLSA, only to enhance them. As a result, Defendants' arguments that the NYLL does not require service charges or commissions to be included in overtime calculations are without merit.

## CONCLUSION

Defendants' motions for summary judgment should be denied in their entirety for the reasons above indicated. Defendants have not carried their burdens to show that there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law. On this motion the Court must grant Plaintiffs all reasonable inferences and determine if there is record evidence that supports the non-moving parties.

Questions of fact exist regarding the amounts Defendants charged as service charges and what amounts were remitted to Plaintiffs, the extent to and frequency with which Captains provided direct customer service, etc. There are questions of fact regarding Plaintiffs' overtime claims about Plaintiffs' total compensation for employment and the value of the employer provided meals.

20

Plaintiffs are entitled to their day in court before a jury of their peers.  As a result, it is respectfully requested that an order be entered denying Defendants' motions in their entirety, and for such other relief as the Court deems proper.

Dated:  Brooklyn, New York

March 13, 2015

LAW OFFICE OF DAVID WIMS
David C. Wims, Esq. (DW-6964)
*Attorneys for Plaintiffs*
1430 Pitkin Ave., 2nd Fl.
Brooklyn, NY 11233
(646) 393-9550

21