# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK
### Brooklyn Division

| | |
|---|---|
| RUBEN DIAZ, RENE FERNANDEZ, MOHAMMED ISMAT, PRADIP SAHA, RAMANDRA SAHA, MAXINE SMITH, ABDUR RAQUIB, JOHNNY RAMIREZ, MADGY SAAD, WALTER FREIRE, MOZIBUR RAHMAN, CHRISTOPHER STAVROPOULOS, ABDUR RAHMAN, SYED AHMED, WALTER GARCIA, ASHIF MIRU, BISWA SAHA, SAYOT ALPHONSE, ALBERTO PRADO, MAURICE SCHWARTE, ABELLA BOUALE, DENZIL HANNAH, MILAD BARSOUM, MOAZZEMUL HAQUE, and ARUN SAHA, <br><br>    Plaintiffs, <br><br> v. <br><br> AMEDEO HOTELS LIMITED PARTNERSHIP, NWPH, LLC, NORTHWOOD HOSPITALITY, LLC <br><br>    Defendants. | Case No. 1:12-cv-04418-JMA |

**DEFENDANT AMEDEO HOTELS LIMITED PARTNERSHIP'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT**

**TABLE OF CONTENTS**

A. Plaintiffs' Claims Were Resolved by Collective Bargaining Agreement ............................ 2

B. The Contracts Provided Adequate Notice to the Hotel's Customers................................... 3

C. There is no Competent Evidence that Defendant Took any Tips ....................................... 4

D. Nothing Prohibited the Captains from Sharing in the Service Charges.............................. 5

E. Plaintiffs met all the Requirements of the Section 7(i) Exemption to the Fair Labor Standards Act ................................................................................................................ 7

F. Plaintiffs were not entitled to Overtime Under New York Law........................................ 10

## TABLE OF AUTHORITIES

**Cases**

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n. 18 (1945) ....................................................... 7
*Hoops v. Keyspan Energy*, 822 F. Supp. 2d 301, 307 (E.D.N.Y. 2011).......................................... 2
*Jenkins v. Hanac, Inc.*, 493 F. Supp. 2d 556, 558 (E.D.N.Y. 2007)............................................. 11
*Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1174 (7th Cir. 1987) ............................... 7
*Sarmiento v. World Yacht, Inc., 10 N.Y. 3d 70 (2008)*...................................................................... 4
*Seenaraine v. Securitas Security Services USA, Inc.*, 37 A.D. 3d 700, 830 N.Y.S. 2d 728 (App. Div. 2d Dep't. 2007) .................................................................................................................. 11

**Statutes**

29 U.S.C. § 186(c)(5)..................................................................................................................... 10
29 U.S.C. § 207(e)(4)....................................................................................................................... 9
29 U.S.C. §1002(1) ........................................................................................................................ 10
29 U.S.C. §152(3) ............................................................................................................................ 5
29 U.S.C. §158(a)(5)........................................................................................................................ 5
29 U.S.C. §159(b) ........................................................................................................................ 2, 5
29 U.S.C. §173(d) ............................................................................................................................ 3
29 U.S.C. §207(i)............................................................................................................. 2, 7, 8, 9, 11

**Other Authorities**

BNA, How to Take a Case Before the NLRB, p. 256 (8th ed. 2008), citing, 29 U.S.C. §§152(3) . 5
BNA, The Developing Labor Law, Ch. 27, III.C.2a (6th ed. 2008)................................................. 5

**Rules and Regulations**

Fed.R.Civ.P. 56(e) ........................................................................................................................... 5
NLRB Rules and Regulations, 29 C.F.R. §102.60 ......................................................................... 6
U.S. Department of Labor Regulation, 29 C.F.R. § 779.415(a) .................................................... 10

Plaintiffs have not opposed Amedeo Hotels' Motion for Summary Judgment on plaintiffs' claims that Amedeo received unlawful kickbacks and violated the recordkeeping requirements of New York's Labor Law. [1] Accordingly, Amedeo respectfully requests that summary judgment be granted in its favor on the third and fourth Causes of Action of plaintiffs' Fifth Amended Complaint (the "Complaint"). Plaintiffs also have dropped their claims for the payment of the delivery or cover charges the hotel collected in connection with a la carte room service orders. [2] Similarly, plaintiffs have abandoned their claims for a greater portion of the labor or butler fees the hotel charged in connection with some hospitality functions. [3] Amedeo, therefore, also is entitled to summary judgment to the extent that delivery and labor fees are sought in the remaining Causes of Action of the Complaint. [4]

Nevertheless, plaintiffs maintain that Amedeo's Motion should not be granted with respect to their claims that the hotel impermissibly retained the administrative fee it charged for hospitality functions. They also claim the hotel improperly allowed captains in the hotel's room service or In Room Dining ("IRD") Department to participate in the distribution of service charges. In addition, plaintiffs still insist that Amedeo failed to pay them sufficient overtime compensation.

Amedeo again respectfully submits that plaintiffs' claims are barred by operation of the Labor Management Relations Act and the previous resolution of this dispute through collective bargaining with the plaintiffs' Union. Moreover, the guest contracts at issue clearly provided notice to the hotel's customers that the hotel was retaining a 4% administrative fee. There is no

---

[1] Plaintiffs' Memorandum in Opposition at p. 2.
[2] Id.
[3] Id.
[4] Causes of Action I, II, V, VI and VII all stated that the delivery and butler fees were part of plaintiffs' claims. See Complaint at ¶¶ 47, 51, 63, 67, 71.

evidence that any guests were even slightly confused by the contracts' language, much less deceived about the hotel's retention of the administrative fee.  Further, the room service captains at all times were members of plaintiffs' Union and the bargaining unit duly established pursuant to the National Labor Relations Act.  29 U.S.C. §159(b).  Thus, the captains simply were not members of management as a matter of law.  It is equally beyond doubt that plaintiffs were properly paid overtime under New York law and were exempt from overtime under the Fair Labor Standards Act pursuant to the statutory exemption for commission employees. 29 U.S.C. §207(i).  For these reasons and those stated below, Amedeo renews its request that summary judgment be granted in its favor.

    A.  <u>Plaintiffs' Claims Were Resolved Through Collective Bargaining</u>

As described in its initial Brief, Amedeo submits that plaintiffs' claims require this Court to interpret the various collective bargaining agreements between the hotel and the plaintiffs' Union.  Accordingly, the claims are pre-empted by the Labor Management Relations Act.  *See Hoops v. Keyspan Energy*, 822 F. Supp. 2d 301, 307 (E.D.N.Y. 2011).  Moreover, plaintiffs' claims were resolved through collective bargaining negotiations that resulted in the May 2011 Supplemental Agreement with plaintiffs' Union.  Brief at p. 12.   Like the previous agreements concerning the IRD Department, the May 2011 Agreement operated as a supplement to the Industry Wide Agreement ("IWA"), between the hotel and plaintiffs' Union.  *See* Amedeo's Statement of Facts at ¶20.

Plaintiffs gloss over the fact that during the course of these negotiations, the Union represented their interests and that plaintiffs regularly attended the bargaining sessions.  The June 13, 2011 letter from Union Delegates and plaintiffs Magdy Saad and Biswa Saha, constitutes further evidence that the Union implemented the plaintiffs' directions when it executed the

Supplemental Agreement. Id. at ¶29. Indeed, the plaintiffs do not dispute that their complaints led to collective bargaining negotiations, a contract was duly negotiated, and plaintiffs subsequently voted to ratify it. *See e.g.*, Stavropoulos Depo at pp. 50-51 (2011 agreement was a settlement agreement); Sayot Depo at p. 55 (2011 agreement was negotiated after the servers complained).

Federal labor policy favors the voluntary resolution of differences between management and labor. 29 U.S.C. §173(d). This is precisely what happened in the present case. The parties duly negotiated a resolution of disputes that had arisen in the workplace. If the plaintiffs were dissatisfied with the ultimate result, they should have addressed the issues through the IWA's grievance and arbitration procedure.

B. The Contracts Provided Adequate Notice of the Administrative Fee to the Hotel's Customers

The plaintiffs contend that Amedeo did not provide sufficient notice with respect to its retention of a 4% administrative fee on hospitality functions. The Hospitality Event Orders ("HEO's") and Banquet Event Orders ("BEO's") that were used from 2007 forward, however, contained express language informing hotel customers of the administrative fee. Indeed, this language appeared directly above the signature line for the guest and it plainly stated that the hotel was retaining a 4% administrative fee. To accept the plaintiffs' argument that this was not sufficient, one would have to conclude that a "reasonable patron" simply would ignore language printed immediately before his or her signature. Such an assumption is no more reasonable than arguing that any other prominent contractual provision can be ignored by the parties to a contract.

Further, there is no evidence whatever that the hotel somehow misled its customers. The plaintiffs admit they are not alleging that any actual misrepresentations were made and none of the numerous plaintiffs who were deposed testified to the contrary. *See* Plaintiffs' Counterstatement to defendant Northwood's Statement of Facts at ¶30. Thus, the language used in Amedeo's HEO's and BEO's was altogether proper and in compliance with the August 21, 2013 Memorandum from the New York Department of Labor.[5]

Unlike the plaintiffs in *Sarmiento v. World Yacht, Inc.,* 10 N.Y. 3d 70 (2008), the present plaintiffs always understood that the hotel retained a 4% administrative fee. P. Saha Depo at p. 87. The plaintiffs completed a form at the conclusion of every shift that contained a space for "managers tips" and the plaintiffs understood that this was the administrative fee. *See* Haque Depo at p. 45; P. Saha Dep. at p. 93. On a daily basis, the plaintiffs knew down to the penny how their pay was calculated, where it came from, how it was distributed and to whom. This is a far cry from the egregious circumstances present in the *Sarmeinto* case. Amedeo is entitled to summary judgment on this claim of the Complaint.

C. There is no Competent Evidence that Defendant Took any Tips

For the first time in this action, plaintiffs contend that managers somehow took actual tips that had been left by guests for plaintiffs. See Plaintiffs' Memorandum at pp. 8,9. The only support plaintiffs provide for this assertion is four lines of thoroughly ambiguous testimony in the deposition of plaintiff Madgy Saad. Mr. Saad, however, did not supply any factual details about this claim and plaintiffs have not shown that any of the other plaintiffs experienced this supposed phenomenon. This newfound allegation simply is not supported by admissible evidence and should be disregarded by the Court pursuant to Fed.R.Civ.P. 56(e).

---

[5] *See* Exhibit 4 to Amedeo's Motion

4

D.  Nothing Prohibited the Captains from Sharing in the Service Charges

Plaintiffs' continued insistence that the IRD captains improperly received a share of the service charge underscores the extent to which plaintiffs' claims are intertwined with the parties' collective bargaining relationship. There is no dispute that the captains are hourly employees who, along with the plaintiffs, are members of the Union and members of the bargaining unit under the NLRA. *See* 29 U.S.C. §159(b). Indeed, the NLRA excludes supervisors from its definition of those employees who can be represented by a union for purposes of collective bargaining. *See* 29 U.S.C. §152(3) ("The term 'employee'… shall not include… any individual employed as a supervisor…"). In sum, "[s]upervisory employees are excluded from coverage of the [NLRA] and cannot be included in a rank-and-file-bargaining unit." [6] For decades, the Union negotiated collective bargaining agreements on behalf of both the plaintiffs and the captains. Just as the NLRA prohibited the hotel from negotiating wages, hours and other terms and conditions of employment directly with the plaintiffs, the NLRA also prohibited the hotel from negotiating wages, hours and other terms and conditions of employment directly with the captains. *See, e.g.,* 29 U.S.C. §158(a)(5) (unfair labor practice for employer to refuse to bargain with the representative of its employees).

To the extent that the plaintiffs believed that the captains should not have been included in collective bargaining negotiations with the hotel, their complaint should be addressed to their Union. [7] Moreover, if the plaintiffs genuinely considered the captains to be supervisors or managers, then plaintiffs could have pursued a petition for Clarification of the Bargaining Unit (a

---

[6] BNA, How to Take a Case Before the NLRB, p. 256 (8th ed. 2008), citing, 29 U.S.C. §§152(3), 164(a); *see also* BNA, The Developing Labor Law, Ch. 27, III.C.2a (6th ed. 2008).

[7] There was never a period where the plaintiffs did not have a Union Delegate. Ramirez Dep. at p. 23).

5

"UC" petition) with the National Labor Relations Board.  See NLRB Rules and Regulations, 29 C.F.R. §102.60.  The NLRB could then have reconsidered whether the captains were supervisors within the meaning of the NLRA and should have been excluded from the bargaining unit represented by the Union.  Instead, the plaintiffs voluntarily agreed to a series of collective bargaining agreements in which the captains were included among those employees to whom the service charges were distributed.

Moreover, not all of the plaintiffs agree with plaintiffs' current assertion that captains should not participate in the service charge distribution.  Rather, plaintiff Maurice Schwarte testified that he had no objection to sharing the service charges with the captains because the captains help with service.  See Schwarte Dep. at pp. 28, 47;  Amedeo's Statement of Facts at ¶110.  Plaintiff Walter Friere agreed that the captain functions like a head waiter and he has no complaints regarding how the service charges are distributed.  Friere Dep. at p. 25.  Although the plaintiffs contend in their opposition that the captains can "influence the schedules," many of the plaintiffs testified that they have had the same schedules for years, if not decades.  For example, plaintiff Saad testified he had worked the same schedule for 13 to 14 years.  Saad Dep. at p. 22.  Plaintiff Ramirez testified he worked the same schedule between 1998 and 2014.  Ramirez Dep. at p. 17.  Plaintiff Smith testified she worked the same schedule for 17 or 18 years.  Smith Dep. at p. 10.  Plaintiff Ismat testified he worked the same schedule for 14 or 15 years.  Ismat Dep. at p. 25.  Plaintiff Pradip Saha testified he worked the same schedule for over ten years.  Pradip Saha Dep. at p. 26.  Plaintiff Ramendra Saha testified he worked the same schedule for approximately over ten years.  Ramendra Saha Dep. at p. 40.  Plaintiff Diaz testified he worked the same schedule for more than ten years.  Diaz Dep. at p. 33.  Plaintiff Freire testified he worked the same schedule for 15 years.  Freire Dep. at p. 14.  Given that the schedules are set by

seniority, it is difficult to understand how the captains supposedly influenced them. Amedeo requests that summary judgment be entered in its favor on this issue.

E. <u>Plaintiffs met all the Requirements of the Section 7(i) Exemption to the Fair Labor Standards Act</u>

The "prime purpose of the [FLSA] was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n. 18 (1945). In the present case, the plaintiffs are neither unprotected nor unrepresented. As the result of collective bargaining over the past thirty years, they also earn much more than a subsistence wage. The undisputed facts further reflect that nothing about the way in which they were paid violated the FLSA.

As described in Amedeo's Initial Brief, plaintiffs' claims for overtime under the Fair Labor Standards Act are barred by the commission employee exemption to that Act, 29 U.S.C. § 207(i). Plaintiffs acknowledge that there are three requirements for coverage under § 7(i): an employee must be employed in a retail or service establishment; he or she must have a regular rate of pay that exceeds time and one-half the minimum wage; and, over half his or her compensation must represent commissions on goods and services. Plaintiffs' Memorandum at p. 14; *see also Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1174 (7th Cir. 1987). Plaintiffs concede that Amedeo satisfied the first two elements –the hotel is a service establishment and plaintiffs received over time and one-half the minimum wage at all times during their lengthy employment at the hotel. *See* plaintiffs' Memorandum at p. 15.

Plaintiffs also agree that "more than half of Plaintiffs' *cash* compensation comes from service charge or commissions." <u>Id</u>. at p. 16 (emphasis in original). Despite their seeming recognition that the different elements of § 7(i) have been met, plaintiffs assert that the value of

7

the contributions that were made by Amedeo to the employee benefit funds pursuant to the IWA should be considered when determining their total compensation under § 7(i). This argument, however, is contrary to the testimony of many of the plaintiffs themselves, the regulations interpreting § 7(i) and the language of the statute.

First, the plaintiffs readily admitted on deposition that over half their compensation came from their receipt of service charges and that this had been true throughout their employment at the hotel. For example, plaintiff Alphonse Sayot was asked the following questions and gave the following answers:

> Q: Most of your income comes from gratuities and service charges, right? [8]
>
> A: Yes.
>
> Q: So, over half of your income at the hotel comes from gratuities and service charges; Correct?
>
> A: Yes.
>
> Q: That's been true for most of the time you've worked at the hotel; correct?
>
> A: Yes.
>
> Q: That's been true since 2005 that you've earned over half your income from gratuities and service charges at the hotel; correct?
>
> A: Yes. [9]

---

[8] Although the plaintiffs, the defendants and the Union used the colloquial term "gratuity" to describe the charges pertaining to the IRD department, these actually were service charges that automatically were imposed by the hotel on a la carte orders and hospitality functions. See Amedeo's Statement of Material Facts at ¶ 33.

[9] Sayot Dep. at p.34, l. 4 – 24; *see also* McCurley Dec. at ¶25; Cecchini Aff. at ¶ 37; A. Rahman Dep. at pp. 30,31; A. Bouale Dep. at p. 64; A. Prado Dep. at p. 24; A. Miru Dep. at p. 35; B. Saha Dep. at p. 102,103; D. Hannah Dep. at p. 44; M. Smith Dep. at pp. 33,34; J. Ramirez Dep. at pp. 29,30; M. Haque Dep. at pp. 38, 39; P. Saha Dep. at p. 70; W. Friere Dep. at p. 26 and W. Garcia Dep. at p. 19.

8

To avoid the result of these admissions, plaintiffs now argue that compensation for purposes under §7(i) should include the various payments that were made by Amedeo to the different employee benefits funds established under the IWA. In support of this argument, they rely upon a U.S. Department of Labor Regulation, 29 C.F.R. § 779.415(a). While this regulation does provide that all compensation should be considered when determining the amount of an employee's total compensation under § 7(i), it also states that "[p]ayments excludable from the employee's "regular rate" under section 7(e) may be excluded from this computation, if, but only if, they are payments of a kind not made as compensation for his employment during the period."

Section 7(e) of the FLSA, in turn, expressly provides that an employee's regular rate does not include:

> contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees.

29 U.S.C. § 207(e)(4). These are exactly the kinds of contributions, however, that plaintiffs would have the Court include in determining their total compensation. Under the IWA, these payments are made by the hotel to:

- The New York Hotel Trades Council and Hotel Association of New York City, Inc., Health Benefits Fund;

- The New York Hotel Trades Council and Hotel Association of New York City, Inc., Pension Fund;

- The New York Hotel Trades Council and Hotel Association of New York City, Inc., Prepaid Legal Fund; and

- The New York Hotel Trades Council and Hotel Association of New York City, Inc., Industry Training and Scholarship Fund.

*See* IWA, at p. B-1 thru B-13, copy attached to defendant's Motion to Exhibit "6."

9

All of these funds are independent trusts established pursuant to the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), as well as the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1002(1). All contributions are made to the Trustees of the funds and are inherently irrevocable. The contributions are made on a monthly basis and employees are not taxed on the amount. Naturally, an employee may not have any need to receive benefits or services from a particular fund during a given month and in the case of the pension fund, an employee might not receive benefits for many years, if not decades. While the amounts of the different contributions are a percentage of an employee's wages, the payments are mandatory and cannot be said to represent compensation to an employee for a particular period.

Accordingly, there is no dispute of material fact that all of the elements of section 7(i) have been satisfied in this case. The plaintiffs are employees of a retail or service establishment, they received well in excess of time and one-half the minimum wage and over half their compensation came from service charges. Amedeo, therefore, is entitled to summary judgment on plaintiffs' claims under the FLSA.

F. <u>Plaintiffs were not entitled to Overtime Under New York Law</u>

Plaintiffs contend that defendants also violated New York's Labor Law because when they were paid overtime compensation, it was based on their base hourly rate pursuant to the IWA. [10] They contend that this contravened New York's Labor Law although New York's Labor Commissioner has expressly determined that this is perfectly acceptable:

> This memorandum is intended to clarify the definition of "regular rate of pay" for purposes of calculating overtime rates for employees who receive mandatory gratuities or service charges. It is, and always has been, the Department's position that tips and gratuities, whether voluntary or mandatory, are not added into the regular rate of pay and do not increase

---

[10] See plaintiffs' Local Rule Counterstatement to defendant Northwood at ¶¶ 55, 56.

10

> the resulting overtime rates under New York Labor Law and implementing regulations and wage orders ("state law"). The Department of Labor's March 9, 2009, opinion (RO-08-0137) should not be read to imply a contrary conclusion.

N.Y.D.O.L. Memorandum of April 11, 2014, Exhibit "5" to Amedeo's Motion. To reach a contrary result, the plaintiffs posit that they were entitled to overtime under the FLSA, the FLSA provides that commissions should be included in the regular rate of pay and that because of the FLSA's "savings clause," New York's law cannot be interpreted in a less favorable manner.

Plaintiffs' reasoning, however, is exactly backwards. As discussed above, the FLSA provides that no overtime need be paid to commission employees if the requirements of Section 7(i) of the FLSA have been. *See* 29 U.S.C. § 207(i). For the reasons previously stated, the plaintiffs met all of the requirements of 7(i) and freely conceded they had done so. Under the FLSA, therefore, plaintiffs were entitled to no overtime compensation whatever. In contrast, New York's Labor Law does provide for overtime compensation, albeit not at the rate that plaintiffs would prefer. In consequence, New York's Law actually is more favorable to plaintiffs than its federal counterpart.

With respect to the New York Law, plaintiffs have provided no convincing reason for disregarding the New York Department of Labor's interpretation. On this state claim, New York law provides the rule of decision and a federal court should exercise caution before disregarding the state agency's interpretation. *See Jenkins v. Hanac, Inc.*, 493 F. Supp. 2d 556, 558 (E.D.N.Y. 2007) (NYDOL's interpretation of regulation entitled to deference where it is "neither unreasonable, nor irrational, nor in conflict with the regulation's plain meaning); *Seenaraine v. Securitas Security Services USA, Inc.*, 37 A.D. 3d 700, 830 N.Y.S. 2d 728 (App. Div. 2d Dep't. 2007) (same). Plaintiffs have failed to provide any basis for ignoring the clear pronouncement of

11

the New York Labor Department.  In consequence, Amedeo is entitled to judgment as a matter of law on plaintiffs' claims for overtime under the New York Labor Law.

Respectfully submitted, this 14th day of April, 2015.

        **STOKES WAGNER HUNT MARETZ & TERRELL**

By:     */s/ John R. Hunt* _____
        John R. Hunt (admitted *pro hac vice*)
        Paul E. Wagner (PW-0177)
        3593 Hemphill Street
        Atlanta, Georgia 30337
        (404) 766-0076 - Telephone
        (404) 766-8823 - Facsimile
        jhunt@stokeswagner.com
        pwagner@stokeswagner.com
        Attorneys for Defendant Amedeo Hotels LP

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**Brooklyn Division**

| | | |
|---|---|---|
| RUBEN DIAZ, RENE FERNANDEZ, | ) | |
| MOHAMMED ISMAT, PRADIP SAHA, | ) | |
| RAMENDRA SAHA, MAXINE SMITH, | ) | |
| ABDUR RAQUIB, JOHNNY RAMIREZ, | ) | |
| MADGY SAAD, WALTER FREIRE, | ) | |
| MOZIBUR RAHMAN, | ) | |
| CHRISTOPHER STAVROPOULOS, | ) | |
| ABDUR RAHMAN, SYED AHMED, | ) | Case No. 1:12-cv-04418-JMA |
| WALTER GARCIA, ASHIF MIRU, | ) | |
| BISWA SAHA, SAYOT ALPHONSE, | ) | |
| ALBERTO PRADO, | ) | |
| MAURICE SCHWARTE, | ) | |
| ABELLA BOUALE, DENZIL HANNAH, | ) | |
| MILAD BARSOUM, | ) | |
| MOAZZEMUL HAQUE, and | ) | |
| ARUN SAHA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMEDEO HOTELS LIMITED | ) | |
| PARTNERSHIP, NWPH, LLC, | ) | |
| NORTHWOOD HOSPITALITY, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day sent the foregoing document to counsel of record listed below via the Court's CM/ECF website.

David Wims, Esq.  
Law Offices of David Wims  
Attorneys for Plaintiffs  
1430 Pitkin Avenue, 2nd Floor  
Brooklyn, New York 11233  
davidwims@hotmail.com

Judith Stoll, Esq.  
Alexander Soric, Esq.  
Kane Kessler, P.C.  
1350 Avenue of the Americas  
New York, NY 10019  
jstoll@kanekessler.com

13

Dated: April 14, 2015

                    Stokes Wagner Hunt Maretz & Terrell
                    Attorneys for Defendant Amedeo Hotels LP

                    By: _____*/s/ John R. Hunt*_____
                          John R. Hunt

4828-6348-9571, v.  1