UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>For Online Publication Only</u>

-------------------------------------------------------X
RUBEN DIAZ, RENE FERNANDEZ,
MOHAMMED ISMAT, PRADIP SAHA,
RAMANDRA SAHA, MAXINE SMITH,
ABDUR RAQUIB, JOHNNY RAMIREZ,
MADGY SAAD, WALTER FREIRE,
MOZIBUR RAHMAN, CHRISTOPHER
STAVROPOULOS, ABDUR RAHMAN,
SYED AHMED, WALTER GARCIA,
ASHIF MIRU, BISWA SAHA, SAYOT
ALPHONSE, ALBERTO PRADO, MAURICE
SCHWARTE, ABELLA BOUALE, DENZIL
HANNAH, MILAD BARSOUM,
MOAZZEMUL HAQUE, and ARUN SAHA,

**<u>MEMORANDUM &
ORDER</u>**
12-CV-4418 (JMA)

FILED
CLERK

3/29/2016 1:35 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

Plaintiffs,

-against-

AMEDEO HOTELS LIMITED
PARTNERSHIP, NWPH, LLC,
and NORTHWOOD HOSPITALITY, LLC,

Defendants.
-------------------------------------------------------X

APPEARANCES:

David C. Wims
Law Office of David Wims
1430 Pitkin Avenue, 2nd Floor
Brooklyn, NY 11233
*Attorney for Plaintiffs*

John Hunt
Stokes Wagner Hunt Maretz & Terrell
1201 W. Peachtree Street, Suite 2400
Atlanta, GA 30309
*Attorney for Defendant Amedeo Hotels Limited Partnership*

Judith Stoll and Alexander Soric
Kane Kessler, P.C.
1350 Avenue of the Americas
New York, NY 10019
*Attorneys for Defendants NWPH, LLC, and Northwood Hospitality, LLC*

1

**AZRACK, United States District Judge:**

The plaintiffs in this wage-and-hour suit are room service waiters at the New York Palace Hotel.  Plaintiffs allege that the defendants, who operated the hotel, violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"), §§ 190 et seq., by not paying plaintiffs all gratuities to which they were entitled and miscalculating plaintiffs' overtime payments.  Defendants have moved for summary judgment. For the reasons stated below, the Court grants defendants summary judgment on plaintiffs' claim under the FLSA, rejects defendants' argument that plaintiffs' NYLL claims are preempted by federal law, and declines to exercise supplemental jurisdiction over plaintiffs' NYLL claims.

## I.  BACKGROUND

Plaintiffs are current and former employees of the New York Palace Hotel (the "Hotel"). Defendant Amedeo Hotels Limited Partnership ("Amedeo") operated the Hotel until July 2011, at which point the Hotel's operation was taken over by defendants NWPH, LLC, and Northwood Hospitality, Inc. (collectively "NWPH").  (Pls. Rule 56.1 Counterstatement in Response to Amedeo's 56.1 Statement ("Pls. Amedeo 56.1") ¶ 1, ECF No. 82; Pls. Rule 56.1 Counterstatement in Response to NWPH's Rule 56.1 Statement ("Pls. NWPH 56.1") ¶ 4, ECF No. 81.)

Plaintiffs worked as "servers" in the Hotel's In Room Dining Department ("IRDD") and delivered food to guests who ordered room service.  (Pls. Amedeo 56.1 ¶¶ 2–7.)  The servers also worked hospitality functions, which included social events that are held in guest rooms, as well as corporate events in which corporate clients rent a block of rooms.  (Id. ¶ 4.)  The IRDD also employed individuals in the role of "captains." (Id. ¶¶ 5, 8.)

2

When guests order room service, the Hotel charges a mandatory gratuity.  (Id. ¶¶ 33–34.)

When clients book hospitality functions, the Hotel's contracts with the clients include a

mandatory service charge.  (Id. ¶¶ 35–38; see also Decl. of David C. Wims ("Wims Decl.")

Ex. 1, ECF No. 82.)  Since at least 2000, the Hotel has retained 4% of the hospitality service

charge.  (June 2000 Agreement, Decl. of Alyssa Tramposch ("Tramposch Decl.") Ex. A, ECF

No. 79.) Some of the Hotel's hospitality contracts state that the Hotel would retain this 4% as an

administrative fee.  (Pls. Amedeo 56.1 ¶¶ 36–37.)  However, since 2005, at least some of the

Hotel's hospitality contracts failed to inform customers that 4% of the service charge would be

retained by the Hotel as an administrative fee.  (Id. ¶ 36; Wims Decl. Ex. 1.)  The Hotel also

added other surcharges and fees to room service and hospitality purchases, including an hourly

charge for servers who worked hospitality events, known as the "labor" or "butler" fee.  (Pls.

Amedeo 56.1 ¶¶ 40–42.)

The servers and captains were both represented by the New York Hotel Trades Council,

AFL-CIO and Local 6 of Unite Here! (the "Union").  (Id. ¶ 10.)  The Hotel and the Union were

parties to the Industry Wide Agreement ("IWA"), a collective bargaining agreement that covered

multiple employers in the hotel industry.  (Id.)  The Union and the Hotel also entered into

various supplemental agreements that detailed the compensation of the servers and captains and

included formulas for the sharing of service charges and gratuities amongst the servers and the

captains.  (Id. ¶¶ 13–26; June 2000 Agreement; May 2011 Agreement, Tramposch Decl. Ex. B.)

The most recent supplemental agreement was consummated in May 2011 (the "May 2011

Agreement").

The genesis of the May 2011 Agreement dates back to 2010 when the Hotel's

management learned that the Union wanted to bargain about a dispute concerning the servers.

3

(Pls. Amedeo 56.1 ¶ 15.)   In May 2010, numerous servers had sent the Union a letter complaining that the Hotel had violated the collective bargaining agreement by, <u>inter</u> <u>alia</u>, not paying the servers the full amount of the service charge listed on "checks" for hospitality events. (May 2010 Ltr., Decl. of Brandon McCurley ("McCurley Decl.") Ex. 1, ECF No. 79; Pls. Amedeo 56.1 ¶¶ 15–16.)  This letter was ultimately forwarded to the Hotel's management.  (Pls. Amedeo 56.1 ¶ 15.)  The Hotel and the Union then bargained over issues raised by the Union. (<u>Id.</u> ¶ 17.)  Multiple bargaining sessions, which many of the plaintiffs attended, culminated in the 2011 Agreement between the Union and the Hotel.  (<u>Id.</u> ¶¶ 18–26.)  The servers then agreed to ratify this agreement, with 21 of the current plaintiffs casting written ballots in favor of the agreement.  (<u>Id.</u> ¶ 22.)  The Union delegates for the servers who worked during the Hotel's morning shift also signed a letter indicating that those employees agreed to the May 2011 Agreement.  (<u>Id.</u> ¶ 29.)

The May 2011 Agreement increased service charges for guests, revised the distribution formula for gratuities, and included provisions aimed at phasing out the captain position, including a severance package offer that would be extended to the captains.   (May 2011 Agreement).  The May 2011 Agreement also stated that the Hotel could continue to "charge and retain" an administrative fee for hospitality events over and above the gratuity amounts that plaintiffs were entitled to under the May 2011 Agreement.  (<u>Id.</u>)

In September 2011, plaintiff Ruben Diaz and thirteen other servers filed suit against Amedeo and NWPH in New York State Supreme Court, Kings County, alleging various violations of the NYLL.  Eleven additional plaintiffs subsequently joined this action.  In August 2012, plaintiffs filed a third amended complaint, which added a claim for unpaid overtime under the FLSA.  Defendants then removed the action to this Court, citing federal question jurisdiction

based on the FLSA claim.   In March 2013, plaintiffs sought to amend the complaint to add "collective allegations" and pursue a collective action under the FLSA.  (ECF No. 25.)  In April 2013, the Court denied this request.  (ECF No. 32.)  Currently before the Court are defendants' motions for summary judgment.

## II.  DISCUSSION

### A.  Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating that "no genuine issue of material fact exists."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

"An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" "while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "When ruling on a summary judgment motion, [the court] must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

### B.  Overview of Plaintiffs' Claims

Amedeo and NWPH have separately moved for summary judgment on plaintiffs' FLSA claim and NYLL claims.  In response to defendants' motions, plaintiffs withdrew a number of claims.  Still pending is plaintiffs' claim that defendants violated the FLSA by not properly

calculating plaintiffs' overtime payments.  Plaintiffs are also still pursuing four alleged violations of the NYLL.  First, plaintiffs claim that defendants improperly retained an administrative fee for hospitality events because the documentation provided to customers for these events either failed to disclose that the Hotel would retain a portion of the service charge as an administrative fee or included an inadequate notice about the administrative fee.  Second, plaintiffs allege that defendants allowed captains to retain a portion of the servers' pooled gratuities when the captains were precluded, under the NYLL, from participating in this tip pool because the captains were managers and provided minimal direct service to customers.  Third, plaintiffs allege that defendants failed to properly calculate plaintiffs' overtime payments under the NYLL.  Fourth, plaintiffs claim that defendants failed to pay plaintiffs all voluntary gratuities that customers left and that managers improperly retained a portion of the tip pool.  (See Pls. Mem. at 8–9, ECF No. 90.).

As explained below, defendants are entitled to summary judgment on plaintiffs' FLSA claim.  Amedeo also argues that plaintiffs' NYLL claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  The Court disagrees and concludes that, with one minor exception, plaintiffs' NYLL claims are not preempted.  Because plaintiffs' FLSA claim is being dismissed and Amedeo's federal preemption argument fails, the Court declines to exercise supplemental jurisdiction over the NYLL claims.

## C.  **Plaintiffs' FLSA Claim**

Plaintiffs allege that they are entitled to overtime under the FLSA.  Defendants counter that plaintiffs are exempt from overtime under the FLSA because plaintiffs all qualify for the FLSA's commissioned salesperson exemption, 29 U.S.C. § 207(i) (the "7(i) exemption").  Mandatory service charges for waiters that are calculated as a percentage of a total banquet bill

6

qualify as commissions for purposes of the 7(i) exemption.  See Mechmet v. Four Seasons Hotels, Ltd., 825 F.2d 1173, 1178 (7th Cir. 1987).  Defendants bear the burden of proving that plaintiffs qualify for the 7(i) exemption.  See Reiseck v. Universal Commun. of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010).  "Because the FLSA is a remedial law," courts "narrowly construe" exemptions under the FLSA.  Id.

For an employee to be exempt under 7(i), the employee must, inter alia, receive more than half of his total compensation from commissions.  29 U.S.C. § 207(i).  Here, the parties dispute whether plaintiffs received more than half of their total compensation from commissions.  As explained below, defendants have met their burden on this element and are entitled to summary judgment on plaintiffs' FLSA claim.

Plaintiffs concede that "[d]efendants' records demonstrate that more than half of Plaintiffs' cash compensation for employment comes from service charge[s] or commissions."[1] (Pls. Mem. at 16 (emphasis in original).)  In light of this concession, plaintiffs focus their argument on the non-monetary compensation they received.  According to plaintiffs, the calculation of their total compensation for purposes of the 7(i) exemption must include their non-monetary compensation–a point defendants dispute.  Specifically, plaintiffs' brief points to complimentary meals as well as CBA-mandated benefit contributions that the Hotel makes towards the Union's health, pension, prepaid legal, and training and scholarship funds.  (IWA at B-1–B-13, Decl. of John Hunt. Ex. 6, ECF No. 78.)  These CBA-mandated benefit contributions are equal to approximately 30% of plaintiffs' monetary compensation.  (Pls. Mem. at 16–17.)  If these benefit contributions are included in the calculation of plaintiffs' total compensation for

---

[1]  In addition to plaintiffs' concession in their brief, numerous plaintiffs also conceded this point at their depositions. (See Amedeo Mem. at 8 n.9 (citing deposition testimony), ECF No. 76.)

purposes of the 7(i) exemption, many of the plaintiffs would not qualify for the 7(i) exemption. (Id.)

Plaintiffs' argument about meals can be disposed of summarily.  As defendants point out, there is no evidence in the record about plaintiffs receiving any meals.

Plaintiffs' argument that the CBA-mandated benefit contributions should be included in the calculation of total compensation also fails.  Notably, plaintiffs simply ignore the statutory provisions and regulations applicable to such contributions.  29 C.F.R. § 779.415 states, in relevant part, that:

> In determining for purposes of [the 7(i) exemption] whether more than half of an employee's compensation 'represents commissions on goods or services' it is necessary first to total all compensation paid to or on behalf of the employee as remuneration for his employment during the period.  All such compensation in whatever form or by whatever method paid should be included, whether calculated on a time, piece, incentive or other basis, and amounts representing any board, lodging or other facilities furnished should be included in addition to cash payments . . . .  Payments excludable from the employee's 'regular rate' under [29 U.S.C. § 207(e)] may be excluded from this computation if, but only if, they are payments of a kind not made as compensation for his employment during the period.  (See part 778 of this chapter.)

29 C.F.R. § 779.415(a) (emphasis added).

29 U.S.C. § 207(e)(4) excludes from an employee's "regular rate" "contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees."  Id.  Another regulation, 29 C.F.R. § 778.215, spells out various requirements for an employer's contribution to qualify as excludable from an employee's "regular rate" under 29 U.S.C. § 207(e)(4).  These requirements include, inter alia, that: "contributions must be made pursuant to a specific plan or program adopted by the employer, or by contract as a result of collective bargaining"; the "primary purpose of the plan must be to provide systematically for the

payment of benefits to employees on account of death, disability, advanced age, retirement, illness, medical expenses, hospitalization, and the like"; and the "employer's contributions must be paid irrevocably to a trustee or third person pursuant to an insurance agreement, trust or other funded arrangement."  29 C.F.R. § 778.215.

Only a few decisions have analyzed these provisions and none of those cases involve the 7(i) exemption.  See, e.g., Madison v. Resources for Human Dev., Inc., 233 F.3d 175, 184–87 (3d Cir. 2000) (addressing cafeteria benefit plan that allowed employees to receive a cash payment in lieu of benefits and explaining that 29 C.F.R. § 778.215 is "merely an interpretative guideline of the agency," not a "formal agency regulation")[2]; Barnes v. Akal Sec., Inc., No. 04-1350, 2005 WL 1459112, at *2–3 (D. Kan. June 20, 2005).

The Court has reviewed Schedule B of the IWA, which addresses these contributions, and concludes that these contributions satisfy the requirements of both 29 U.S.C. § 207(e)(4) and 29 C.F.R. § 778.215.  As noted earlier, plaintiffs completely ignore this statute and regulation, and do not advance any arguments as to why the contributions at issue should be included in the compensation calculation under these governing provisions.

The Court also concludes that defendants have satisfied 29 C.F.R. § 779.415's additional requirements that the contributions at issue were "payments of a kind not made as compensation for . . . employment during" the relevant "period[s]" in which they were made.  29 C.F.R. § 779.415.  These contributions were made by the Hotel to the various benefit funds—they were not paid to the employees as compensation.  (See also NWPH Mem. at 12 (addressing this regulation), ECF No. 73)  Again, plaintiff does not offer any argument as to why these contributions fail to meet the requirement set out in 29 C.F.R. § 779.415.

---

[2]  None of the funds at issue here allow employees to receive cash in lieu of benefits.  (See IWA, Schedule B ¶ 8(c).)

Finally, plaintiffs' brief states: "Defendants admit that the 'labor fees' plaintiffs [were paid] are hourly compensation, as opposed to commissions on goods or services." (Pls. Mem. at 17.) Other than simply reciting this fact, plaintiffs say nothing else about this point and do not advance any argument concerning this admission. Accordingly, the Court declines to consider this point further.[3]

For the reasons stated above, the Court grants defendants summary judgment on plaintiffs' FLSA claim.

## D. Preemption Under § 301 of the LMRA

Because all of plaintiffs' federal claims have now been dismissed, the Court turns to the question of whether it is has jurisdiction over the remaining state law claims. When all of a plaintiff's federal claims are dismissed at summary judgment, district courts routinely decline to exercise supplemental jurisdiction over any remaining state law claims.[4] (See discussion infra.)

In this case, there is a jurisdictional wrinkle because although only plaintiffs' state law claims remain, Amedeo has argued that those state law claims are preempted by § 301 of the LMRA. If a plaintiff's state law claim is, in fact, preempted by § 301, then a federal court would have jurisdiction over that claim under the doctrine of complete preemption. Vera v. Saks & Co., 335 F.3d 109, 113–14 (2d Cir. 2003). Here, neither defendant has explicitly invoked § 301 preemption as a basis for federal jurisdiction—the only basis for jurisdiction cited in defendants' removal notice was federal question jurisdiction based on plaintiffs' FLSA claim. Nevertheless,

---

[3]  The Court notes that, in arguing that the Hotel's benefit-plan contributions should be factored into plaintiffs' total compensation, plaintiffs' brief includes a chart indicating that, if those contributions are included in plaintiffs' compensation, they would not qualify for the 7(i) exemption. Plaintiffs, however, say nothing about the amount of labor fees they received or how those fees might alter the 7(i) calculus.

[4]  The only party to address the question of supplemental jurisdiction is NWPH, which argues in its reply brief that, if the FLSA claim is dismissed on summary judgment and any state law claims survive, then the Court should decline to exercise supplemental jurisdiction over the surviving state law claims.

the Court believes it is appropriate to address Amedeo's § 301 preemption argument, which, as explained below, is not persuasive.

### 1.  Standard for § 301 Preemption

Section 301 of the LMRA states that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185(a).  Section 301 has been interpreted to preempt state-law "'claims founded directly on rights created by collective-bargaining agreements, and also claims "'substantially dependent on analysis of a collective-bargaining agreement.'"  Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) (quoting Electrical Workers v. Hechler, 481 U.S. 851, 859, n.3 (1987)).  "When a state law claim alleges a violation of a labor contract or when the resolution of a state law claim depends on an interpretation of a collective bargaining agreement, Section 301 preempts that claim."  Alderman v. 21 Club Inc., 733 F. Supp. 2d 461, 467–68 (S.D.N.Y. 2010) (citing Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 261 (1994)).  "Federal law preempts such state claims to further the federal goal of developing a uniform federal common law to govern labor disputes, 'lest common terms in bargaining agreements be given different and potentially inconsistent interpretations in different jurisdictions.'"  Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003) (quoting Livadas v. Bradshaw, 512 U.S. 107, 122 (1994)).

However, if state law establishes enforceable rights that "are independent of a labor contract, actions to enforce such independent rights or rules would not be preempted by section 301" unless the resolution of the state law claim will be substantially dependent on an analysis of a collective bargaining agreement.  Vera, 335 F.3d at 115.  Moreover, the "bare fact that a

collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not" trigger § 301 preemption.  <u>Livadas</u>, 512 U.S. at 124.

While "[t]he boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive," § 301 preemption is not triggered by "simple reference to the face of the CBA."  <u>Wynn v. AC Rochester</u>, 273 F.3d 153, 158 (2d Cir. 2001) (per curiam).  "For example, § 301 does not mandate preemption of state law claims requiring 'mere referral' to a CBA to determine damages owed."  <u>Johnson v. D.M. Rothman Co., Inc.</u>, 861 F. Supp. 2d 326, 332 (S.D.N.Y. 2012) (quoting <u>Vera</u>, 335 F.3d at 115).  On the other hand, a NYLL claim will be preempted where it "require[s] substantial analysis of the CBA."  <u>Vera</u>, 335 F.3d at 116.

**2. Analysis**

Amedeo raises several arguments as to why § 301 preemption applies.  The Court addresses each argument in turn.

*i. The Preemption Cases Cited by Amedeo Are Clearly Distinguishable*

Amedeo's primary argument is that § 301 preemption applies here because "the Court cannot determine whether the plaintiffs are entitled to payments under the [May 2011 Agreement] and IWA without interpreting these contracts."  (Amedeo Mem. at 13–14, ECF No. 76.)  Amedeo is, with one minor exception, wrong.  Plaintiffs' rights to any additional compensation stem solely from the NYLL, not from the CBAs.  And, plaintiffs' NYLL claims do not substantially depend on an analysis of the CBAs.

In support of its preemption argument, Amedeo cites two purportedly analogous cases, <u>Johnson v. D.M. Rothman Co., Inc.</u>, 861 F. Supp. 2d 326, 328 (S.D.N.Y. 2012), and <u>Hoops v. Keyspan Energy</u>, 822 F. Supp. 2d 301 (E.D.N.Y. 2011).  According to Amedeo, like <u>Hoops</u> and

Johnson, this Court "would be required to review and interpret a collective bargaining agreement to determine whether the plaintiffs are entitled [to the administrative fee and the captain's portion of the service charges] in light of the contract's history and the meaning of the provisions creating and interpreting those categories of charges . . . ." (Amedeo Mem. at 14.)

Both Johnson and Hoops are clearly distinguishable from the instant suit. In those cases, the plaintiffs claimed that their employers failed to pay them certain compensation due under a CBA and then violated the FLSA and NYLL by not factoring that unpaid compensation into their overtime pay. In both cases, the courts concluded that the plaintiffs' claims were preempted by § 301 because determining the threshold question of whether the plaintiffs were entitled to the unpaid compensation under their CBAs required interpretation and application of the CBAs. Johnson, 861 F. Supp. 2d at 328 (finding certain statutory claims preempted because, to determine whether the plaintiffs were entitled to the unpaid compensation at issue, the court would have to interpret ambiguous terms of the collective bargaining agreement); Hoops, 822 F. Supp. 2d at 307 ("[B]ecause the Plaintiff's entitlement to unpaid overtime under the FLSA hinges on his contractual right to receive night shift differentials in his straight-time wage rate, the Court cannot adjudicate the statutory claim without a ruling on the contract claim."). By contrast, here, plaintiffs are not claiming that defendants failed to pay any compensation owed under the CBAs. Rather, plaintiffs are simply claiming that they are owed additional compensation under the NYLL, over and above the amounts that the Hotel has already paid pursuant to the CBAs.

Furthermore, as explained below, closer examination of each of plaintiffs' NYLL claims confirms that those claims are, with one minor exception, not preempted by § 301.

*ii.  The Administrative Fee Claim*

Plaintiffs claim that, under NYLL § 196-d, they are owed additional gratuities from hospitality events because the Hotel failed to adequately inform its customers that a portion of the service charge would be retained by the Hotel as an administrative fee.  The May 2011 Agreement confirms that the Hotel "may continue to charge and retain an administrative fee for Hospitality Events and on [room service] transactions above" the specific percentages that the servers and captains are entitled to receive under the May 2011 Agreement.  The prior supplemental agreement also stated that the Hotel would retain 4% of the hospitality service charge.  (June 2000 Agreement ¶ 9(a) (stating that 4% of hospitality gratuities would be distributed to managers).)  These provisions, however, are irrelevant to plaintiffs' claim that they are entitled, under the NYLL, to the administrative fee that the Hotel retained.  Accordingly, this statutory claim is not preempted by § 301.  See Alderman, 733 F. Supp. 2d at 467 (rejecting similar argument and finding no preemption where the plaintiffs sought, under the NYLL, portions of service charges that they were not entitled to under their CBA).

*iii.  The Claim that Captains Improperly Participated in the Tip Pool*

Plaintiffs also claim that they are entitled, under NYLL § 196-d, to the portions of the gratuities and service charges that the captains received because the captains were not eligible under the NYLL to share in these gratuities.  Plaintiffs' purported right to these gratuities arises under the NYLL and not the CBAs.  Thus, § 301 preemption would only apply here if plaintiffs' claim was substantially dependent on an analysis of the CBAs.  As explained below, although the CBAs may need to be referenced to resolve this NYLL claim, § 301 preemption does not apply because the meaning of the CBA provisions at issue are clear and not disputed.

The Union agreed in the CBAs that the captains would share in the tip pool along with the servers.   To resolve plaintiffs' NYLL claim, the CBAs, which contain this tip-pooling agreement, will likely have to be referenced because this tip-pooling agreement appears to have some relevance to the plaintiffs' claim.   NWPH argues that, under the NYLL, if servers who receive tips agree in a collective bargaining agreement to share the tips, then the servers may include any other employees that they wish in the tip pool.[5]   (NWPH Mem. at 20–21; NWPH Reply Mem. at 7–9, ECF No. 74.)   And, even if NWPH is incorrect on this point of state law, the fact that the Union agreed in the CBAs to the tip-pooling arrangement would still appear to have some relevance to plaintiffs' NYLL claim because the relevant regulations promulgated by the New York Department of Labor treat employer-mandated tip-pooling differently, in certain respects, than voluntary tip-pooling.   See N.Y. Comp. Codes R. Regs. tit. 12, §§ 146–2.14, 2.15, 2.16.   Although addressing the merits of plaintiffs' claim will likely require reference to the CBAs, that alone is not enough to trigger preemption because a substantial analysis of the CBAs is not necessary.   The parties do not dispute that the Union, which represented the plaintiffs, agreed in the CBAs that the servers and captains would share gratuities pursuant to the formulas set out in the CBAs.   (See, e.g., Pls. Amedeo 56.1 ¶ 25.)   Where a defendant asserts that a state law claim will involve interpretation of a CBA, but "the meaning of" the "plain language" of a provision is "clear" or undisputed, then the state law claim is not preempted by § 301.   Johnson, 861 F. Supp. 2d at 334; see also Wynn v. AC Rochester, 273 F.3d 153, 158 (2d Cir. 2001) (holding that state law fraud claim was not preempted because the defendant did not dispute the plaintiff's interpretation of the CBA, which was compelled by the CBA's "plain language").   Although the parties dispute the effect of the CBAs' tip-pooling agreements under New York

---

[5] Only NWPH, which did not raise a preemption argument, contends that, under the NYLL, the Union's consent to the tip pooling arrangement precludes plaintiffs' claims about the captains' share of the tips.  Amedeo does not advance this argument.

law, the existence of these tip-pooling agreements is both clear and undisputed. Accordingly, this claim is not preempted by § 301.

### iv. The Overtime Calculation Claim

Plaintiffs also maintain that defendants violated the NYLL by not properly calculating plaintiffs' overtime payments. Specifically, plaintiffs claim that their overtime payments failed to account for service charges and gratuities that the Hotel has already paid to plaintiffs pursuant to the CBA. This claim is clearly not preempted by § 301. See Isaacs v. C. Parking Sys. of New York, Inc., No. 10-CV-5636, 2012 WL 957494, at *5 (E.D.N.Y. Feb. 27, 2012) (finding overtime claim not preempted where the court was required only "to determine whether shift differentials and longevity pay, which were actually paid to [plaintiff], should have been used to calculate [plaintiff's] overtime rate"). Plaintiffs also argue that the disputed administrative fee and captain's share of the tips, which were discussed at length above, should have also been included in plaintiffs' overtime calculation. As explained earlier, plaintiffs' underlying claims concerning these monies is not preempted. Accordingly, their claim that such payments should have also been factored into their overtime calculations is not preempted by § 301.

### v. The Claim that the Hotel and its Managers Improperly Kept Certain Tips

Finally, plaintiffs allege that defendants failed to pay to plaintiffs all voluntary gratuities left by customers and that managers improperly retained a portion of the tip pool. (See Pls. Mem. at 8–9.). Defendants dispute this claim, arguing, inter alia, that this claim is not even properly before the Court because it was not alleged in plaintiffs' complaint. (See NWPH Reply Mem. at 5 n.1; Amedeo Reply Mem. at 4.) The Court assumes, solely for purposes of the preemption analysis, that this claim is properly before the Court.

16

Plaintiffs argue that because defendants withheld these disputed tips, plaintiffs "received less than their entitlement under the NYLL and CBA." (Pls. Mem. at 8 (emphasis added).) To the extent that this claim seeks recovery of tips based on the theory that plaintiffs were entitled to the tips under the CBAs, this claim is preempted. To the extent that this claim simply seeks recovery of tips based solely on the theory that defendants' retention of the tips violated independent rights under the NYLL, this claim is not preempted. The details of this claim are insufficiently developed for the Court to address the issue of § 301 preemption with any additional precision for this claim.

### vi. Amedeo's Remaining Arguments

The Court now turns to the remaining arguments that Amedeo advances under the rubric of § 301 preemption.

Amedeo suggests, without citation to any authority, that plaintiffs' NYLL claims were "resolved" through negotiations that resulted in the May 2011 Agreement. (Amedeo Reply Mem. at 2.) Amedeo, however, never actually argues that this agreement released or waived any past or future claims under the NYLL. And, even if plaintiffs' NYLL claims could be waived or released in a CBA, such a waiver or release would have to be "'clear and unmistakable.'" Wadsworth v. KSL Grand Wailea Resort, Inc., 818 F. Supp. 2d 1240, 1251 (D. Haw. 2010) (quoting Valles v. Ivy Hill Corp., 410 F.3d 1071, 1076 (9th Cir. 2005)); see also Hinterberger v. Catholic Health, No. 08-CV-380S, 2008 WL 5114258, at *6 n.5 (W.D.N.Y. Nov. 25, 2008) (suggesting that even if certain provisions of the NYLL might be waivable, a CBA would have to contain "a clear and unmistakable waiver" to waive a NYLL claim), amended on reconsideration by, 2009 WL 4042718, at *2 (W.D.N.Y. Nov. 19, 2009).

17

The May 2011 Agreement contains no such language—it merely states that the Union's grievance is dismissed with prejudice.  (May 2011 Agreement at 3.)  Moreover, the Court notes that the bargaining that culminated in the May 2011 Agreement began with the May 2010 letter that the servers sent to the Union.  The May 2010 letter complained that the Hotel's actions regarding the hospitality service charges violated the CBA, but said nothing about violations of the NYLL.  This further confirms that the May 2011 Agreement did not resolve plaintiffs' NYLL claims.

Amedeo also notes that the IWA contains a broad arbitration provision.  However, Amedeo never actually argues that this arbitration provision covers claims under the NYLL.  In any event, it is clear that this provision, which does not explicitly refer to NYLL claims, does not compel arbitration of such claims.  "A collective bargaining agreement cannot preclude a lawsuit concerning individual statutory rights unless the arbitration clause in the agreement was 'clear and unmistakable' that the parties intended to arbitrate such individual claims."  Alderman, 733 F. Supp. 2d at 469 (quoting Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 79–80 (1998)); see also 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 256 (2009).  The arbitration provision in the IWA does not meet this standard.

Finally, none of the remaining arguments that Amedeo asserts under the guise of preemption justify preemption here.  Accordingly, § 301 does not preempt plaintiffs' NYLL claims.

**E.  Supplemental Jurisdiction**

Because plaintiffs' FLSA claim has been dismissed and plaintiffs' remaining state law claims are not preempted, the Court again turns to the question of supplemental jurisdiction.

District courts "may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the claim raises a novel or complex issue of State law [or] . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  Carnegie-Mellon U. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Since all of the federal claims have been dismissed on summary judgment, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims and will remand those claims back to state court.   The Court's decision to remand these claims to state court is buttressed by the Court's conclusion that plaintiffs' claims for recovery of the administrative fees retained by the Hotel appear to raise novel questions of state law.

Plaintiffs claim that defendants' retention of the administrative fee for hospitality events violated NYLL § 196-d because the documentation provided to customers for these events either failed to disclose that the Hotel would retain a portion of the service charge as an administrative fee or included inadequate notice to the customers about the administrative fee.  NYLL § 196-d states, in relevant part, that "[n]o employer . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."  Id. (emphasis added).  In Samiento v. World Yacht Inc., 883 N.E.2d 990, 994–95 (N.Y. 2008), the seminal case in this area, the New York Court of Appeals held that, in considering claims such as plaintiffs', the standard is whether a "reasonable patron . . . would understand" that the mandatory charge collected by the employer was a gratuity.  In January 2011, the New York State Department of Labor ("NY DOL") issued

19

regulations further clarifying the contours of such claims.  N.Y. Comp. Codes R. Regs. tit. 12, §§ 146–2.18, 2.19.   Section 146-2.19 of the regulations, entitled "Administrative charge not purported to be a gratuity or tip," states:

> (a) A charge for the administration of a banquet, special function, or package deal shall be clearly identified as such and customers shall be notified that the charge is not a gratuity or tip.
>
> (b) The employer has the burden of demonstrating, by clear and convincing evidence, that the notification was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity.
>
> (c) Adequate notification shall include a statement in the contract or agreement with the customer, and on any menu and bill listing prices, that the administrative charge is for administration of the banquet, special function, or package deal, is not purported to be a gratuity, and will not be distributed as gratuities to the employees who provided service to the guests. <u>The statements shall use ordinary language readily understood and shall appear in a font size similar to surrounding text, but no smaller than a 12-point font</u>.

<u>Id.</u> (emphasis added).

At least some of the Hotel's hospitality contracts contained notices about the administrative fee that appear to comply with the regulations in every respect except for the fact that the notices are in less than 12-point font.[6]  Plaintiffs suggest that failure to abide by the regulation's 12-point font requirement is a per se violation of § 196-d that automatically renders the administrative fees at issue "purported" gratuities under the statute.  NWPH argues that the regulations are ambiguous and that § 2.19(c) of the regulations is merely a safe-harbor provision.  NWPH also contends that plaintiffs' interpretation of the regulations would lead to an illogical result.  No state or federal courts have resolved this question of interpretation, although one

---

[6]  In discussing this claim, the Court does not purport to resolve the merits of these issues, which are discussed only to highlight their novelty.

federal court has characterized NWPH's position as, at least, "colorable."[7] Maldonado v. BTB Events & Celebrations, Inc., 990 F. Supp. 2d 382, 393–94 (S.D.N.Y. 2013).  Moreover, even if plaintiffs' interpretation of this regulation is correct, the question then arises whether, given the deference accorded to the NY DOL's interpretations of the NYLL, this regulation is a permissible interpretation of NYLL § 196-d.[8]  See Samiento, 883 N.E.2d at 994–95 ("The Labor Department's interpretation of a statute it is charged with enforcing is entitled to deference. The construction given statutes and regulations by the agency responsible for their administration, 'if not irrational or unreasonable,' should be upheld."  (citations omitted)); see also Barenboim v. Starbucks Corp., 995 N.E.2d 153, 158 (N.Y. 2013).  These novel questions of New York law should be decided by New York State courts and provide an additional reason for this Court to decline supplemental jurisdiction over the NYLL claims.

## III. CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are granted on plaintiffs' FLSA claim.  With the one minor exception noted on page 17 supra, the Court rejects Amedeo's argument that plaintiffs' NYLL claims are preempted by § 301 of the LMRA.  The Court declines to exercise supplemental jurisdiction over plaintiffs' NYLL claims and remands

---

[7]  During the notice-and-comment process for this regulation, some commentators indicated that "[r]equiring" this notification in 12-point font on all marketing documents would be burdensome and, instead, suggested that having this notification in the same font as the surrounding text should be sufficient.  N.Y. Reg. Dec. 29, 2010, LAB-21-10-00005-A.  The NY DOL concluded that this concern was unfounded and responded that "[w]e . . . are keeping that 12-point font requirement."  Id.  None of the parties here mention the NY DOL's response to this comment.

[8]  The Court also notes that some of the Hotel's customers for hospitality events appear to have been large corporate clients who are presumably well-versed in reviewing contracts.  (See, e.g., Wims Decl. Ex. 1 (contracts for hospitality events held by Morgan Stanley, Wells Fargo, Hyundai Motor, and Honeywell).)

those claims back to New York State Supreme Court, Kings County.  The Clerk of Court is

directed to close this case.

Dated:  March 29, 2016
Central Islip, New York

_____/s/ (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE